STATE OF HAWAII, Plaintiff–Appellee, v. **JOSEPH THOMAS FERRARO**, Defendant–Appellant

NO. 14026

(CR. NOS. 88–007K; 88–102K & 87–408)

OCTOBER 30, 1990

BURNS, C.J., HEEN, AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

In these consolidated cases, Criminal No. 88–007K (No. 88–007K) and Criminal No. 88–102K (No. 88–102K), Defendant Joseph Thomas Ferraro (Defendant) appeals his jury trial conviction for the offenses of Forgery in the Second Degree, Hawaii Revised Statutes (HRS) § 708–852 (Supp. 1989) in Count XVI of No. 88–007K; Theft in the Second Degree, HRS § 708–831 (Supp. 1989), Theft in the Fourth Degree, HRS § 708–833 (Supp. 1989), and Attempted Theft in the Second Degree, HRS § 705–500 (1985) and § 708–831, in Counts IV, VI, and IX, respectively, in No. 88–102K. A related case, Criminal No. 87–408 (No. 87–408), which had also been consolidated with No. 88–007K and No. 88–102K, was dismissed before trial on Defendant's motion, for violation of Rule 48, Hawaii Rules of Penal Procedure (HRPP) (1977) (Rule 48).[1] We affirm.

I.

In the spring and summer of 1987, Defendant was employed by Medical Personnel Pool (Pool), a company that provided home medical care for its clients in Kona. Along with other Pool employees, Defendant was assigned to care for Ms. Lina Franke (Lina), who was critically ill. In the course of the employment,

---

[1] The State has not appealed the dismissal of No. 87–408.

Defendant purchased food, medicine, and other supplies for Lina, using checks issued by her.

On October 13, 1987, Defendant was arrested. On October 15, 1987, he was charged by complaint in No. 87–408 with one count of Forgery in the Second Degree and one count of Theft in the Second Degree. The charges were based on a check dated July 2, 1987. On October 16, 1987, the charges were amended to Theft in the Second Degree and Obtaining a Signature by Deception, HRS § 708–856(1)(a) (1985). On Defendant's not guilty plea, trial was set for February 23, 1988.

On January 19, 1988, Defendant was indicted by the grand jury in Kona in No. 88–007K for the following offenses:

| Count | Date of Offense | Offense |
|---|---|---|
| I | May 8, 1987 | Forgery, Second Degree |
| II | May 8, 1987 | Theft, Third Degree |
| III | May 14, 1987 | Forgery, Second Degree |
| IV | May 14, 1987 | Theft, Third Degree |
| V | June 24, 1987 | Theft, Third Degree |
| VI | August 12, 1987 | Forgery, Second Degree |
| VII | August 12, 1987 | Theft, Second Degree |
| VIII | August 19, 1987 | Forgery, Second Degree |
| IX | August 19, 1987 | Theft, Fourth Degree |
| X | August 26, 1987 | Forgery, Second Degree |
| XI | August 26, 1987 | Theft, Third Degree |
| XII | August 25, 1987 | Forgery, Second Degree |
| XIII | August 25, 1987 | Theft, Fourth Degree |
| XIV | August 19, 1987 | Forgery, Second Degree |
| XV | August 19, 1987 | Theft, Fourth Degree |
| XVI | August 28, 1987 | Forgery, Second Degree |
| XVII | August 28, 1987 | Attempted Theft, Second Degree |

On February 19, 1988, the State moved to consolidate No. 87–408 and No. 88–007K on the ground that the "cases arise from a series of acts connected together or constituting parts of a single scheme or plan." The motion was orally granted on February 24, 1988, and trial was set for June 6, 1988. Trial was rescheduled to July 26, 1988, when Defendant first accepted, then rejected, a plea agreement. On April 13, 1988, the court orally granted Defendant's motion to dismiss the theft counts in No. 88–007K on the ground that they did not state the amount of money Defendant allegedly stole.

On July 19, 1988, Defendant was again indicted on the theft charges in No. 88–102K. This time each count in the indictment alleged the amount stolen. On July 28, 1988, the State moved to consolidate all three cases on the same ground as its February 19, 1988 motion. The State's July 28, 1988 motion was orally granted on August 24, 1988. Trial did not begin until April 18, 1989.

On January 13, 1989, Defendant filed a motion to dismiss all three cases on constitutional and Rule 48 speedy trial grounds. On the same day, the State filed a motion to continue the trial scheduled for January 17, 1989, asserting the unavailability of an essential State witness. Both motions were heard on January 13, 1989. In findings of fact and conclusions of law filed on February 15, 1989, the court found that "the total period of delay for purposes of Rule 48(b) equals six (6) months and fifteen (15) days." Nevertheless, the court denied Defendant's motion and granted the State's motion, continuing the trial to April 18, 1989. However, the court struck the State's grounds for the continuance and held that the delay from January 13 to April 18, 1989, would not be excluded from the Rule 48 calculations. The court scheduled a pre–trial conference for April 4, 1989, and instructed Defendant to renew his motion to dismiss at that time.

On March 20, 1989, Defendant filed another motion to dismiss on speedy trial grounds, which was heard on April 4, 1989.

This time, the court dismissed No. 87–408, but denied dismissal of No. 88–007K and No. 88–102K.

On April 18, 1989, the court entered findings of fact (Findings) and conclusions of law (Conclusions) and an order in which it calculated separate Rule 48 periods in the three cases as follows:

| Case No. | Beginning Date | Total Elapsed Time | Excludable Time | Net Elapsed Time |
|----------|----------------|--------------------|------------------|------------------|
| 87–408 | October 16, 1987[2] | 549 days | 357 days | 192 days |
| 88–007K | January 27, 1988 | 446 days | 294 days | 152 days |
| 88–102K | July 21, 1988 | 271 days | 187 days | 84 days |

The court also held that Defendant's constitutional right to a speedy trial was not violated.

Defendant asserts on appeal that his speedy trial rights under Rule 48, HRPP, and the United States and Hawaii State Constitutions were violated, and that the evidence was insufficient to support the convictions. We will discuss Defendant's arguments *seriatim*.

## II.
## A.

In our review of a Rule 48 trial court decision, the findings of fact made by the lower court are subject to the clearly erroneous standard of review. [3] However, whether those facts constitute any

---

[2] October 16, 1987, is the date the amended complaint was filed in No. 87–408. The court used the wrong date. It should have used October 13, 1987, the date when Defendant was arrested. Rule 48(b), Hawaii Rules of Penal Procedure (HRPP) (1977). The error is immaterial.

[3] The provisions of Rule 48, HRPP, pertinent to this case read as follows:

**Rule 48. DISMISSAL.**

\* \* \*

(b) **By Court.** Except in the case of traffic offenses, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months from:

of Rule 48(c)'s excludable periods is a question of law the determination of which is freely reviewable. *See State v. Miller*, 4 Haw. App. 603, 671 P.2d 1037 (1983). If the six month period for commencement of trial mandated by Rule 48(b) has been exceeded, the case must be dismissed; however, whether the dismissal should be with or without prejudice is within the discretion of the trial court. *State v. Durry*, 4 Haw. App. 222, 665 P.2d 165 (1983).

## B.

Defendant first argues that when the lower court found, on January 13, 1989, that 6 months and 15 days had elapsed from the filing of the amended complaint on October 16, 1987, to the date of trial on April 18, 1989, the court was mandated by Rule 48(b)(1) to

(1) the date of arrest or of filing of the charge, whichever is sooner, on any offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made[.]

\* \* \*

(c) **Excluded Periods.** The following periods shall be excluded in computing the time for trial commencement:

(1) periods of delay resulting from collateral or other proceedings concerning the defendant, including but not limited to penal irresponsibility examinations and periods during which he is incompetent to stand trial, hearings on pretrial motions, interlocutory appeals and trials of other charges;

(2) periods of delay resulting from congestion of the trial docket when the congestion is attributable to exceptional circumstances;

(3) periods of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel;

(4) periods of delay resulting from a continuance granted at the request of the prosecutor if:

(i) the continuance is granted because of the unavailability of evidence material to the prosecution's case, when the prosecutor has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date[.]

dismiss all three cases, since the charges in all three cases arose from the same conduct or episode.[4] We disagree.

Rule 48(b)(1) requires the dismissal of charges not tried within 6 months of the date of a defendant's arrest or the filing of the charge "on any offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made." The terms "conduct" and "episode" are not defined in HRPP or any prior cases in this jurisdiction. Consequently, we look elsewhere to determine their meaning.

Rule 48(b) is derived from the ABA Standards of Criminal Justice (ABA Standards) Relating to Speedy Trial 12–2.1through 2.3. Commentary to Rule 48. Therefore, we may look to the ABA Standards for guidance as to the meaning of the terms in question. *See State v. Dumlao*, 6 Haw. App. 173, 715 P.2d 822 (1986). The commentary to ABA Standard 12–2.2(a) defines "conduct" and "episode" as follows:

> The word "conduct" is usually taken to mean an act or omission, and thus covers those cases where several offenses arise out of the same act, as where a defendant recklessly operates an automobile and kills two persons. "Episode" means "an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series." This would cover the simultaneous robbery of seven individuals, the killing of several people with successive shots from a gun, the successive burning of three pieces of property, or such contemporaneous and related crimes as burglary and larceny, or kidnapping and robbery.

---

[4] Assuming the court erred in not dismissing No. 87–408 on January 13, 1989, it corrected the error when it did so on April 4, 1989.

2 ABA Standards, Standard 12–2.2(a), Commentary, at 12.21 (2d ed. 1986) (footnotes omitted).

In *State v. Carroll*, 63 Haw. 345, 627 P.2d 776 (1981), the supreme court, in determining whether the State was barred by HRS § 701–109(2) (1985)[5] from trying the defendant on a second charge allegedly arising from the same episode as a separate offense for which he had already been tried, held

> the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge.

*Id.* at 351, 627 P.2d at 780.

In the light of those principles, the charges in No. 88–007K and No. 88–102K do not arise from the same conduct or episode as those in No. 87–408. In No. 87–408, the charges arise from Defendant's negotiation of a single check on July 2, 1987. Similarly, in No. 88–007K, each theft count, with the exception of Count V, is paired in a couplet with a forgery count, each couplet arising from a particular check. The alleged factual basis for each couplet is that Defendant induced Lina to sign a check, leaving blank either the name of the payee or the amount of the check, or both. Defendant

---

[5] Hawaii Revised Statutes (HRS) § 701–109(2) (1985) reads as follows:

**Method of prosecution when conduct establishes an element of more than one offense.**

\* \* \*

(2) Except as provided in subsection (3) of this section, a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

then filled in the blanks and negotiated the check, keeping some or all of the proceeds.[6]

The theft charge in each couplet in No. 87–408 and No. 88–007K took place in such proximity of time and circumstances to its paired forgery charge that the theft charge could not be related without reference to the forgery. The paired charges had to be tried together pursuant to HRS § 701–109(2), *supra*. However, each of the couplets relates to discrete transactions and could have been tried separately, since none of the couplets require reference to any other couplet. Thus, since the charges in No. 87–408 arose from different conduct or a different episode than those in No. 88–007K and No. 88–102K, Defendant's arrest did not start the speedy trial clock in the latter two cases. Therefore, the court was not required to dismiss No. 88–007K and No. 88–102K when it dismissed No. 87–408.

## C.

Defendant also argues that "[t]here is clearly no basis for separating No. 88–102K from No. 88–007K." We agree.

ABA Standard 12–4.1 Absolute Discharge reads in pertinent part as follows:

If a defendant is not brought to trial before the running of the time for trial, as extended by excluded periods, the consequence should be absolute discharge.[7] *Such discharge should forever bar prosecution for the offense*

---

[6] The last couplet in No. 88–007K differs from the others in that Defendant is charged only with attempted theft. This is because Defendant was thwarted in his effort to cash the check.

[7] It should be noted that the question of absolute discharge is left to the discretion of the trial court in Rule 48(b), HRPP.

*charged and for any other offense required to be joined
with that offense.*

2 ABA Standards, *supra*, Standard 12–4.1, at 12.43 (footnote and emphasis added).

Standard 12–4.1's requirement that discharge from prosecution on account of undue delay include other offenses required to be joined with the discharged offense is "[t]o ensure that prosecutors not circumvent speedy trial requirements by unduly delaying trial on one charge and subsequently proceeding on another closely related charge," and "incorporates by reference standards as to required joinder." 2 ABA Standards, *supra*, Commentary at 12.45. The principle established by ABA Standard 12–4.1, that offenses required to be joined with a discharged or dismissed offense should also be discharged, is applicable in the instant case.

There is no question that, despite the severance of the couplets brought about by the dismissal of the theft counts in No. 88–007K and the indictment in No. 88–102K, the State was required to join the paired charges in those two cases for trial. HRS § 701–109(2), *supra*. Although each couplet could have been tried separately, the State chose not to do so.[8] Since the forgery charges were being tried together, their paired theft charges had to also be tried with them. Therefore, both No. 88–007K and No. 88–102K have the same beginning date for Rule 48 calculations, and are governed by the same limitation and exclusions.[9] To hold otherwise would contravene the clear dictate of HRS § 701–109(2), *supra*.[10]

---

[8] We note that, if the State had moved to sever the couplets, the decision would have been in the discretion of the court. Rule 14, HRPP. However, the related charges in each couplet had to be tried together. HRS § 701–109(2), *supra*.

[9] In our view, Rule 48(b)(2), HRPP, which starts a new speedy trial clock on the date when charges previously dismissed on a defendant's motion are reinstated, is not applicable to the charges in No. 88–102K.

[10] The reasoning of Part II.C. of the opinion does not cover the theft charge in Count III of No. 88–102K (Count III), which had been Count V of No. 88–007K,

## D.

We now consider the Rule 48 time periods.[11]

### Total Elapsed Days

January 27, 1988 to April 18, 1989 447

### Excludable Days

### Rule 48(c)(1)

### Motions

| Event | Date Event Occurred | Hearing or Disposition | Excludable Days |
|---|---|---|---|
| Motion to Consolidate | Filed February 19, 1988 | February 24, 1988 | 5 |
| Motion To Dismiss Theft Counts | Filed March 22, 1988 | April 13, 1988 | 22 |

### Collateral Proceedings

| | | | |
|---|---|---|---|
| Plea Negotiations[12] | May 11, 1988 | July 26, 1988 | 76 |

---

since Count III had no corresponding forgery charge. However, Count III was dismissed on the prosecutor's motion on April 18, 1989, along with Counts I, III, XII, and XIV in No. 88–007K, and Counts I, II, VII, and VIII in No. 88–102K.

[11] We concur in the lower court's February 15, 1989 ruling that the period of continuance of the trial from January 17, 1989, to April 18, 1989, should not be excluded. In its findings of fact and conclusions of law relating to the State's motion to continue, the court struck all the prosecutor's stated grounds for the continuance. Therefore, Rule 48(c)(4)(i) does not apply to exclude the period of delay.

[12] In April, 1988, Defendant accepted a plea agreement and was scheduled to enter a change of plea on May 11, 1988. However, Defendant requested a continuance of the change of plea to May 31, 1988. At that time, trial was scheduled for June 6, 1988. Plea negotiations failed and trial was reset to July 26, 1988. Defendant acknowledges responsibility for the delay occasioned by the aborted plea negotiations.

### Rule 48(c)(2)

| | | | |
|---|---|---|---|
| Court continued trial because ongoing jury trial taking longer than anticipated | | Trial Continued from October 11, 1988, to October 25, 1988 | 14 |

### Rule 48(c)(3)

| | | | |
|---|---|---|---|
| Defendant's Motion to Continue | Filed December 5, 1988 | Trial Continued from December 20, 1988, to January 17, 1989 | 28 |

### Rule 48(c)(4)(i) [13]

| | | | |
|---|---|---|---|
| State's Motion to Continue | Filed July 7, 1988 | Trial Continued from July 26, 1988, to August 23, 1988 | 28 |
| State's Motion to Continue | Filed August 10, 1988 | Trial Continued from August 23, 1988, to October 11, 1988 | 49 |
| State's Motion to Continue | Filed October 14, 1988 | Trial Continued from October 25, 1988, to December 20, 1988 | 56 |
| | | **Total Excludable Days** | 278 |
| | **Net Elapsed Days** | | 169 |

Since the net elapsed time was less than six months, the court was correct in not dismissing the charges in No. 88–007K and No. 88–102K. [14]

---

[13] *See* Section III.B., *infra*, for a discussion of the reasons for the State's continuances.

[14] We do not discuss Defendant's argument that the trial court erred in calculating the Rule 48 exclusions, since we have made our own calculations.

## III.

Defendant also argues that his constitutional right to a speedy trial was violated. [15]

> "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." *Beavers v. Haubert*, 198 U.S. 77, 87, 25 S. Ct. 573, 576, 49 L. Ed. 950, 954. "Whether delay in completing a prosecution . . . amounts to an unconstitutional deprivation of rights depends upon the circumstances. . . . The delay must not be purposeful or oppressive." *Pollard v. United States*, 352 U.S. 354, 361, 77 S. Ct. 481, 486, 1 L. Ed. 2d 393, 399. "[T]he essential ingredient is orderly expedition and not mere speed." *Smith v. United States*, 360 U.S. 1, 10, 79 S. Ct. 991, 997, 3 L. Ed. 2d 1041, 1048.

*United States v. Ewell*, 383 U.S. 116, 119, 86 S. Ct. 773, 776, 15 L. Ed. 2d 627, 631 (1966).

In determining whether there has been a speedy trial violation, we balance (1) the length of the delay; (2) the reason for the delay; (3) Defendant's assertion of his speedy trial right; and (4) prejudice. *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *State v. Almeida*, 54 Haw. 443, 509 P.2d 549 (1973). Our careful balancing of those factors indicates Defendant's rights were not violated.

---

[15] The Sixth Amendment of the United States Constitution and Article I, section 14 of the Hawaii State Constitution both guarantee a defendant in a criminal case a speedy trial.

## A.
## Length of Delay

We find the length of the delay presumptively prejudicial. *State v. Valletta*, 66 Haw. 351, 662 P.2d 204 (1983).

## B.
## Reasons for the Delay

The thrust of Defendant's argument is that the main reason for the pre–trial delay was the absence of Hans Franke (Franke), Lina's son, who was paying Lina's living expenses. Defendant contends that the State knew where Franke was, but that he simply refused to attend the trial. Consequently, Defendant contends the delay was unjustified and should weigh against the State. We disagree.

Other matters contributed to the delay. Indeed, Defendant, himself contributed nearly three months through his change of mind on the plea negotiations and his motion to continue the trial. One and a half month's delay was also caused by court congestion.

The State sought four continuances. [16] One was based on the ongoing trial of another criminal case. Of the remaining three, two were based on the unavailability of Franke and two other State witnesses, while the fourth was based solely on Franke's unavailability.

Franke was considered a material witness by the State. The State expected Franke's testimony would counter Defendant's

---

[16] Only three of the State's continuances resulted in Rule 48 exclusions. Although the fourth continuance was granted, the court refused to allow the delay to be excluded. *See* Section II.D., *supra*.

claim that Franke had authorized him to conduct Lina's affairs. Franke lived in San Francisco and was employed in France, where he was the manager of an American oil company's operations. He was involved in prolonged and complex legal proceedings in France involving his employer, which required him to remain there for an indeterminate time. The State was in contact with Franke, and he kept assuring the State that he would come for the trial but was unavoidably delayed on account of the requirements of French law. In the end, Franke was unable to appear at trial.

One of the other witnesses was a police officer who was testifying in another trial in Hilo, while the third witness was an employee of Pool who was scheduled to go to the mainland for a convention of home care providers.

In *Barker*, the Supreme Court noted that a missing witness is a valid reason for appropriate delay. There were no missing witnesses in *Barker*. However, the Court said that the illness of a key witness was a strong excuse. *Barker*, *supra*. In our view, the unavailability of witnesses in this case was a sufficient reason for the State's delays. The delay does not appear to be deliberate or designed to give the State an advantage at trial.

## C.
### Defendant's Assertion of his Speedy Trial Right

Defendant first asserted his speedy trial right orally on July 11, 1988, at a hearing on the State's motion for continuance. Thereafter, he orally asserted his right at each hearing on the State's motions to continue, and finally filed his motion to dismiss on January 13, 1989. His assertions weigh in his favor; however, their weight is lessened by the reasons for the delay and the lack of prejudice.

## D.
## Prejudice

Defendant's attempt to show prejudice is unconvincing. Prejudice in a speedy trial claim is evaluated in the light of the interests protected by the right. Those interests are: "[1] to prevent oppressive pre-trial incarceration; [2] to minimize anxiety and concern of the accused; and [3] to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193, 33 L. Ed. 2d at 118. As Defendant was released on bail approximately two weeks after his arrest, we are concerned here only with the second and third interests. In *Barker*, the Supreme Court noted that the third interest is the most serious. *Id.*

## 1.

"[A] mere assertion that one had been upset or concerned about a pending criminal prosecution is not sufficient" to establish prejudicial anxiety. *Reed v. United States*, 383 A.2d 316, 320 (D.C.), *cert. denied*, 439 U.S. 871, 99 S. Ct. 203, 58 L. Ed. 2d 183 (1978). "[T]he government will prevail unless the defendant offers objective, contemporaneous evidence of anxiety, such as prompt and persistent assertion of the desire for a speedy trial coupled with a demonstrable basis for the court's believing the delay is traumatic." *Parks v. United States*, 451 A.2d 591, 602 (D.C. 1982), *cert. denied*, 461 U.S. 945, 103 S. Ct. 2123, 77 L. Ed. 2d 1303 (1983).

On October 17, 1988, and January 13, 1989, at hearings on State's motions to continue, Defendant testified that:

1. he lost his job at Pool;

2. as a result of a March 16, 1988 newspaper article regarding the charges, he lost his waiter's job and his catering business, and was asked to use a "stage name" in a play in which he was acting;

3. he was unable to go to the mainland in November and December, 1988, to interview for a job on an inter–island cruise ship;

4. he had to pay for counseling;

5. he was unable to get a job in the medical field;

6. he lost two other jobs because of the pending charges; and

7. his fiancee broke up with him early in 1988 because of the charges.

In order for the above events to be relevant they must have occurred after the period when the case could not have reasonably been expected to go to trial. *Parks*, 451 A.2d at 603. Close review of Defendant's testimony indicates that some of the incidents he complained of took place too soon after the charges were filed to have been caused by the delay. Thus, numbers 2 and 7 occurred too early. We note, also, that number 1 occurred before the charges were filed. As for numbers 5 and 6, we are uncertain about their relevancy, since we do not know when they occurred. Moreover, there may have been a number of reasons why Defendant was denied other employment.

With regard to number 3, the record does not support Defendant's testimony that he was unable to go to the mainland in November and December, 1988, for a job interview. We note, first, that Defendant was on bail, and there does not appear to have been a court order prohibiting him from leaving the State. His bail status only required him to appear for trial. Additionally, on December 5, 1988, the court, at Defendant's request, continued the trial from December 20, 1988, to January 17, 1989. Thus, for almost the entire month of December 1988, Defendant was neither legally nor practically restricted from travelling as he contends.

Item 4 is *prima facie* evidence that Defendant suffered some anxiety from the delay in bringing him to trial. However, in our view, the trauma does not weigh heavily against the State in view of the reasons for the delay and, as is discussed below, the lack of prejudice to his ability to prepare for trial.

## 2.

Defendant contends that his defense was impaired when Lina's death on March 29, 1988, deprived him of his right to confront her, and he was unable to locate other witnesses. The argument is without merit.

First, Lina died on March 29, 1988, not long after the indictment in No. 88–007K. Lina's death occurred too early in the pretrial period to be prejudicial. Moreover, it appears from the record that Lina's testimony would in fact have been damaging to Defendant. Consequently, he was not hurt by her death.

Second, although Defendant argues that his ability to locate other witnesses was impaired by the delay, he has not indicated what efforts he made to find those witnesses, or what their testimony might prove. Defendant's assertions lack the specificity sufficient to show prejudice. *See United States v. Ewell, supra.*

## IV.

Defendant argues that the evidence was insufficient to support his convictions. Our review of the evidence in the light most favorable to the State indicates that the jury's verdict is supported by

substantial evidence, *State v. Tamura*, 63 Haw. 636, 633 P.2d 1115 (1981), and Defendant's argument is utterly without merit.

Affirmed.

*Judd R. Scott*, Deputy Public Defender, on the brief for defendant–appellant.

*Carol S. W. Kitaoka*, Deputy Prosecuting Attorney, County of Hawaii, on the brief for plaintiff–appellee.