Richard E. **TEDLOCK**, Appellant–Defendant Below,

v.

**STATE** of Indiana, Appellee–Plaintiff Below.

No. 89A01–9506–CR–182.

Court of Appeals of Indiana.

Sept. 25, 1995.

David Puterbaugh, Centerville, for Appellant.

Pamela Carter, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

ROBERTSON, Judge.

Richard E. Tedlock appeals the sentence imposed upon his four convictions, entered pursuant to a plea agreement, of Security Fraud, a class C felony. The sole issue raised on appeal may be restated as:

> whether the trial court's imposition of consecutive sentences producing an aggregate sentence of sixteen years for four class C felony convictions violates Ind.Code 35–50–1–2 which restricts the trial court's authority to impose consecutive sentences for convictions "arising out of an episode of criminal conduct."

We affirm.

### FACTS

The facts in the light most favorable to the trial court's judgment reveal that Tedlock, who was not registered as a broker-agent in Indiana, sold investment securities/promissory notes styled "Declaration of Trust" to many different victims over a two-year period, having fraudulently represented the investments to be FDIC and FSLIC insured (or otherwise guaranteed) when they were not guaranteed. Apparently Tedlock invested the money he obtained from the illegal sales of securities in a real estate project which failed.

On June 2, 1989, Tedlock, operating out of his office, sold a "Declaration of Trust" security to Noah Berry for $30,000.00. Tedlock sold Mr. Berry another "Declaration of Trust" security for $20,000.00. Mr. Berry never received any of his money back. Mr.

Berry was over sixty-five years old. The crime against Mr. Berry was charged as Count XI of the information.

On July 24, 1989, Tedlock, operating out of his office, sold one of his "Declaration of Trust" securities to Alfred and Martha Vandevender, each of whom were over sixty-five years old, for $15,000.00. Tedlock had sold a total of four such securities to the Vandevenders representing a total investment of $65,-000.00. The Vandevenders never received any of their money back. The crime against the Vandevenders was charged as Count II of the information.

On July 3, 1991, Tedlock sold a "Declaration of Trust" security to Mary Schmid at her home for $15,000.00. Schmid never received any of her money back. The crime against Schmid was charged as Count VIII of the information.

In January of 1990, Tedlock sold a "Declaration of Trust" to Janeva Jones at her home for $16,000.00. The crime against Jones was charged as Count V of the information.

Tedlock pleaded guilty to the above described counts of Securities Fraud in exchange for the dismissal of several other pending charges. The trial court sentenced Tedlock to concurrent eight year terms on Counts II and VIII. The trial court also sentenced Tedlock to concurrent eight year terms (with two years suspended) on Counts V and XI. The trial court ordered Counts V and XI to run consecutively to Counts II and VIII for an aggregate sentence of sixteen years with two years suspended.

### DECISION

In 1994, our general assembly amended I.C. 35–50–1–2 to impose a previously nonexistent limitation upon a trial court's discretion to impose consecutive sentences. *Salone v. State* (1995), Ind.App., 652 N.E.2d 552, 562. The relevant portion of the amended statute, which Tedlock argues has been violated, reads:

> The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for murder and felony convictions for which a person re-

ceives an enhanced penalty because the felony resulted in serious bodily injury if the defendant knowingly or intentionally caused the serious bodily injury, *the total of the consecutive terms of imprisonment,* exclusive of terms of imprisonment under IC 35–50–2–8 [habitual offender statute] and IC 35–50–2–10 [habitual substance offender statute], *to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.*

I.C. 35–50–1–2 (Emphasis added). Tedlock argues that all four of his class C felony convictions arise out of one "episode" and therefore the maximum sentence that may be imposed under the above statute is the presumptive sentence for a class B felony, ten years. We disagree.

Prior to Tedlock's sentencing, there had been no definition of "episode" for the purposes of the above statute. However, in 1995 our general assembly again amended I.C. 35–50–1–2 in pertinent part as follows:

> (b) As used in this section, "episode of criminal conduct" means offenses or a connected series of offenses that are closely related in time, place, and circumstance.

P.L. 304–1995 (Effective July 1, 1995).

■ The State initially argues that the 1994 amendment was not in effect at the time Tedlock committed the crimes and therefore, he is not entitled to the retroactive application of the amendment, citing *State v. Alcorn* (1994), Ind., 638 N.E.2d 1242, 1245 (Convicted persons are to be sentenced under the statutes in effect at the time of the commission of the crime). The State has correctly stated the general rule. *See Rowold v. State* (1994), Ind.App., 629 N.E.2d 1285, 1288. However, under the doctrine of amelioration, when the penalty for a crime is decreased by an ameliorative amendment enacted after the commission of the crime but before the defendant's sentencing, the defendant may take advantage of the ameliorative amendment. *Id.*

■ The 1994 amendment to I.C. 35–50–1–2 which imposed a previously nonexistent limitation upon the trial court's authority to impose consecutive sentences is ameliorative in nature. Therefore, it is appropriately applied in the present case.

■ The central issue in the present case is discerning the legislature's intention regarding the meaning of the term "episode" as used in the 1994 amendment. Determining legislative intent is foremost in construing any statute and, wherever possible, this court will give deference to that intent. *Alvers v. State* (1986), Ind.App., 489 N.E.2d 83, 88, *trans. denied.* Words are given their plain and ordinary meaning. *Id.* Although penal statutes must be strictly construed against the state, such statutes must not be construed so narrowly as to exclude cases fairly covered thereby. *Id.* at 89. When the legislature amends a statute, it is presumed that the legislature intended to change the law unless it clearly appears that the amendment was made only to express the original intention of the legislature more clearly. *Id.* at 88. The legislature's amendment of a statute is indicative of the legislature's intent at the initial enactment of the statute. *American Underwriters Group v. Williamson* (1986), Ind.App., 496 N.E.2d 807, 809.

■ We have no hesitation in concluding that our legislature's 1995 amendment to I.C. 35–50–1–2 which added a definition of the term "episode" was intended to clarify, and not change, the 1994 version of the statute. Thus, we hold the legislature intended that the term "episode" as used in the 1994 amendment have the definition provided in the 1995 amendment as set out above.

An examination of two of our sister states' definitions of the term "episode" is consistent with and further illuminates our legislature's definition. In *State v. Ferraro* (1990), 8 Haw.App. 284, 800 P.2d 623, the Hawaii Court of Appeals defined "episode" quite similarly to the definition adopted by our legislature as follows:

'the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of

one charge cannot be related without referring to details of the other charge.'

800 P.2d at 629 (Citations omitted). In reaching this definition, the *Ferraro* court referred to the commentary from ABA Standard 12–2.2(a) which reads:

'Episode' means 'an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series.' This would cover the *simultaneous* robbery of seven individuals, the killing of several people with successive shots from a gun, the successive burning of three pieces of property, or such *contemporaneous* and related crimes as burglary and larceny, or kidnapping and robbery.

*Id.* at 628 (Emphasis added); In *State v. Bailey* (1984), 37 Wash.App. 733, 683 P.2d 225, *review denied,* the Washington Court of Appeals also referred to the commentary from ABA Standard 12–2.2(a) in holding that " 'episode' includes only acts that occur in close proximity in time and space, ordinarily only in a connected sequence." 683 P.2d at 227.

■ In the present case, Tedlock's four convictions arise out of crimes he committed against different victims at different times spanning approximately two years. While two of the fraudulent sales occurred at Tedlock's office, the other two took place at the victims' homes. The four fraudulent sales were not connected as a complete account of each of Tedlock's four offenses can be related without referring to details of another. That Tedlock sold the same type of security to each of his victims in order to finance his real estate scheme does not make all four transactions one criminal episode any more than a robber's use of the same gun to commit four different robberies upon four different victims on four different occasions would constitute one criminal episode.

Based on the above, we hold that Tedlock's four Security Fraud convictions do not constitute one criminal episode. Accordingly, the consecutive sentencing of Tedlock to an aggregate term of sixteen years for these

four convictions does not violate I.C. 35–50–1–2 and we find no error.

Judgment affirmed.

BAKER and DARDEN, JJ., concur.