**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 03 2012, 9:29 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY A. BALDWIN**
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

KYLE E. BOWERS,                          )
                                         )
    Appellant-Defendant,            )
                                         )
        vs.                  )    No. 73A01-1110-CR-464
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.             )

APPEAL FROM THE SHELBY SUPERIOR COURT
The Honorable Barbara Arnold Harcourt, Senior Judge
Cause No. 73D02-1004-FA-1

**July 3, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Kyle Bowers appeals his sentence following his convictions for three counts of dealing in a schedule I or II narcotic, as Class B felonies, and three counts of reckless homicide, as Class C felonies, pursuant to a guilty plea. Bowers presents three issues for our review:

1.    Whether the offenses constitute an episode of criminal conduct under Indiana Code Section 35-50-1-2(c)(2).

2.    Whether the trial court abused its discretion when it identified aggravating circumstances at sentencing.

3.    Whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On or about February 20 or 21, 2007, Bowers delivered methadone to Sam Woods, who, in turn, delivered it to DeWayne Saylor. Saylor subsequently died, and the methadone provided by Bowers was determined to be a contributing factor in Saylor's death. On or about February 24 or 25, 2010, Bowers delivered methadone to Cody Saylor, who subsequently died, and the methadone was determined to be a contributing factor in Cody's death. And on or about March 17 or 18, 2010, Bowers delivered methadone to Brett Fuller, who subsequently died, and the methadone was determined to be a contributing factor in Fuller's death.

In April 2010, the State charged Bowers with three counts of dealing in a schedule I or II narcotic, as Class B felonies, and three counts of reckless homicide, as Class C felonies. During a hearing on June 2, 2011, Bowers pleaded guilty as charged. At

sentencing, the trial court identified two aggravators, namely, Bowers' criminal history and the fact that he was on probation when he committed the instant offenses. And the trial court identified several mitigators, namely: Bowers' age; his "substance dependency at the time of the commission of the crimes[;]" the fact that there was "victim involvement in the crimes[;]" his guilty plea; and his expression of remorse. Transcript at 89. The trial court imposed sentence as follows: Count I (Class B felony dealing to victim DeWayne Saylor) ten years, consecutive to Counts III and V and concurrent with the remaining counts; Count II (Class C felony reckless homicide) four years, concurrent with the remaining counts; Count III (Class B felony dealing to victim Cody Saylor) twenty years, consecutive to counts I and V and concurrent with the remaining counts; Count IV (Class C felony reckless homicide) eight years, concurrent with the remaining counts; Count V (Class B felony dealing to victim Brett Fuller) twenty years, consecutive to counts I and III and concurrent with the remaining counts; and Count VI (Class C felony reckless homicide) eight years, concurrent with the remaining counts. Thus, the trial court imposed an aggregate fifty-year sentence. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Episode of Criminal Conduct

Bowers contends that his offenses constitute a single episode of criminal conduct under Indiana Code Section 35-50-1-2, which provides in relevant part:

> (b) As used in this section, "episode of criminal conduct" means offenses or a connected series of offenses that are closely related in time, place, and circumstance.

3

(c) Except as provided in subsection (d) or (e), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider the:

(1) aggravating circumstances in IC 35-38-1-7.1(a); and

(2) mitigating circumstances in IC 35-38-1-7.1(b);

in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Bowers maintains that his offenses constitute a single episode of criminal conduct and that the trial court erred when it imposed a sentence greater than thirty years (the advisory sentence for a Class A felony, which is one class higher than his Class B felony convictions). We cannot agree.

In Reed v. State, 856 N.E.2d 1189, 1200 (Ind. 2006), our supreme court described the criteria to be considered in determining whether offenses constitute a "single episode of criminal conduct" under the statute:

The statutory definition of "episode of criminal conduct" is as unambiguous and straightforward today as it was in 1995: "offenses or a connected series of offenses that are closely connected in time, place, and circumstance." I.C. § 35-50-1-2(b). The Court of Appeals addressed this provision in Tedlock v. State, 656 N.E.2d 273, 276 (Ind. Ct. App. 1995), holding in part that an episode of criminal conduct exists where "a complete account of one charge cannot be related without referring to details of the other charge." In that case, the defendant pleaded guilty to four counts of securities fraud arising out of crimes committed against different victims at different times spanning approximately two years. Id. at 276. The Court thus concluded that the defendant's crimes did not qualify as an episode of criminal conduct within the meaning of Indiana

4

Code section 35-50-1-2(b). Subsequent Court of Appeals opinions seem to have seized upon the "complete account of one charge" language as an essential factor in determining whether offenses constitute an episode of criminal conduct.[] Indeed even this Court has said, "[t]he issue is whether 'the alleged conduct was so closely related in time, place, and circumstances that a complete account of one charge cannot be related without referring to details of the other charge.' " O'Connell v. State, 742 N.E.2d 943, 950-51 (Ind. 2001) (quoting Flynn v. State, 702 N.E.2d 741, 748-49 (Ind. Ct. App. 1998); Tedlock, 656 N.E.2d at 276)). However, this is a bit of an overstatement. We are of the view that although the ability to recount each charge without referring to the other can provide additional guidance on the question of whether a defendant's conduct constitutes an episode of criminal conduct, it is not a critical ingredient in resolving the question. Rather, the statute speaks in less absolute terms: "a connected series of offenses that are closely connected in time, place, and circumstance." I.C. § 35-50-1-2(b). And as we have observed, "Tedlock emphasizes the timing of the offenses" and "refers to the 'simultaneous' and 'contemporaneous' nature of the crimes which would constitute a single episode of criminal conduct." Smith v. State, 770 N.E.2d 290, 294 (Ind. 2002) (citing Tedlock, 656 N.E.2d at 276).

Here, Bowers' first offense occurred in 2007, and the latter two offenses occurred in late February and mid-March 2010, respectively. While all three offenses are similar in that each involved Bowers' delivering methadone to the victims and the victims' deaths, they were not "simultaneous" or even "contemporaneous." See id.; see also Smith v. State, 770 N.E.2d 290, 294 (Ind. 2002) (holding offenses neither simultaneous nor contemporaneous where defendant deposited stolen checks at various bank branches over the course of one afternoon, with thirty minutes to an hour between offenses). We hold that Bowers' offenses do not constitute a single episode of criminal conduct. Accordingly, the trial court did not err when it imposed a sentence greater than thirty years.

## Issue Two: Identification of Aggravators

Bowers next contends that the trial court abused its discretion when it sentenced him. Specifically, he asserts that "the significance of [his] criminal history is questionable" because "the record is unclear whether [his 2005 Florida conviction] was a felony or a misdemeanor, or if Bowers actually violated his probation." Brief of Appellant at 6. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007).

> So long as the sentence is within the statutory range, it is subject to review only for abuse of discretion. As we have previously observed, "[i]n order to carry out our function of reviewing the trial court's exercise of discretion in sentencing, we must be told of [its] reasons for imposing the sentence. . . . This necessarily requires a statement of facts, in some detail, which are peculiar to the particular defendant and the crime, as opposed to general impressions or conclusions. Of course such facts must have support in the record." Page v. State, 424 N.E.2d 1021, 1023 (Ind. 1981). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." K.S. v. State, 849 N.E.2d 538, 544 (Ind. 2006) (quoting In re L.J.M., 473 N.E.2d 637, 640 (Ind. Ct. App. 1985)).

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence-including a finding of aggravating and mitigating factors if any-but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

Id. at 490–91.

Again, Bowers' sole contention on this issue is that "the significance of [his] criminal history is questionable" given the lack of clarity regarding the particulars of that history. Brief of Appellant at 6. First, as the State points out, Bowers' counsel conceded that Bowers was on probation when the offenses occurred. Second, while the parties debated the class of Bowers' 2005 conviction at sentencing, the record does not indicate that that issue was resolved. Accordingly, in imposing sentence, the trial court stated merely that Bowers' criminal history consisted of a conviction for "possession of alcohol," and the court did not state whether it was a misdemeanor or felony. Transcript at 90. Bowers has not demonstrated that the trial court abused its discretion on this issue.

Regardless, even assuming the trial court abused its discretion on this issue, the fact that Bowers was on probation at the time of the instant offenses, without more, is sufficient to support the enhanced sentences here. See Ryle v. State, 842 N.E.2d 320, 323 n.5 (Ind. 2005) (observing that "[p]robation stands on its own as an aggravator"), cert. denied, 549 U.S. 836 (2006); see also Dixon v. State, 825 N.E.2d 1269, 1272 (Ind. Ct. App. 2005) (holding single valid aggravator alone is enough to enhance a sentence or to impose it consecutive to another and that the same factor may be used both to enhance a presumptive sentence and to justify consecutive sentences), trans. denied. And, in any event, we will not reconsider the weight a trial court assigns to a valid aggravator. Anglemyer, 868 N.E.2d at 490-91.

### Issue Three: Appellate Rule 7(B)

Finally, Bowers contends that his sentence is inappropriate in light of the nature of the offenses and his character. Although a trial court may have acted within its lawful

7

discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize [ ] independent appellate review and revision of a sentence imposed by the trial court." Roush v. State, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). Id. Revision of a sentence under Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. See App. R. 7(B); Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Roush, 875 N.E.2d at 812 (alteration original).

The Indiana Supreme Court more recently stated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. The principal role of appellate review is to attempt to "leaven the outliers." Id. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." Id. at 1224.

8

Here, again, the trial court imposed sentence as follows: Count I (Class B felony dealing to victim DeWayne Saylor) ten years, consecutive to Counts III and V and concurrent with the remaining counts; Count II (Class C felony reckless homicide) four years concurrent with the remaining counts; Count III (Class B felony dealing to victim Cody Saylor) twenty years, consecutive to counts I and V and concurrent with the remaining counts; Count IV (Class C felony reckless homicide) eight years concurrent with the remaining counts; Count V (Class B felony dealing to victim Brett Fuller) twenty years, consecutive to counts I and III and concurrent with the remaining counts; and Count VI (Class C felony reckless homicide) eight years concurrent with the remaining counts. Thus, the trial court imposed an aggregate fifty-year sentence.

Bowers' sole argument on this issue is that he received "a disproportionate sentence as compared to [his codefendant] Woods[,]" whose aggregate sentence is eight years, with two years executed. Brief of Appellant at 6. Bowers urges us to reduce his sentence in light of that disparity, and he cites Cardwell, 895 N.E.2d at 1226, in support of that contention. In Cardwell, the defendant caused his girlfriend's daughter to sustain "partial and full-thickness burns" to her hands, and his girlfriend, his codefendant, contributed to the injuries by delaying medical treatment. Id. at 1221. The defendant was sentenced to thirty-four years, and his codefendant was sentenced to one and one-half years. In its analysis on appeal, our supreme court considered the nature of the offenses (two counts of neglect of a dependent), including the defendant's conduct (noting that he "applied aloe gel and bandages" to the victim's burns and that "his actual knowledge of the water temperature was vigorously contested") and the victim's injuries

9

("no permanent injuries"). Id. Finally, the court observed that "although Caldwell's sentence [of thirty-four years] is not required to be compared to [his codefendant's sentence of one and one-half years], Cardwell's behavior as to the second count was substantially the same, or even less culpable than [his codefendant's]." Id. Our supreme court then revised Cardwell's sentence and imposed an aggregate sentence of seventeen years. Id.

Here, Bowers argues that both he and Woods "provided the de[]cedents with the drugs that ultimately led to their deaths, and both pleaded guilty to their offenses." Brief of Appellant at 7. But "Bowers was charged with three instances, while Woods was charged with one; however Bowers received longer sentences on each of the charges than Woods received." Id. First, we note that Bowers does not direct us to any part of the record to support his contentions on this issue. Second, our review of the record indicates that while Woods delivered the methadone from Bowers to DeWayne Saylor, Woods was not involved in the other two deaths, as implied by Bowers in his brief on appeal.[1] Finally, in addition to Bowers' responsibility for three deaths versus Woods' responsibility for one, Woods was merely a middleman and was "paid" by Bowers with one-half of a methadone pill.

Our supreme court has observed that "although we 'need not compare' sentences of codefendants, 'we are not precluded' from 'compa[ring] sentences among those convicted of the same or similar crimes.' " Knight v. State, 930 N.E.2d 20, 22 (Ind.

---

[1] Bowers' statement that "[b]oth defendants provided the de[]cedents with the drugs that ultimately led to their deaths" implies Woods' involvement with all three victims. Brief of Appeal at 7. But Bowers does not direct us to any part of the record on appeal to show that Woods was involved in the deaths of the two other victims.

10

2010) (citations omitted). Here, the evidence shows that Bowers pleaded guilty for causing three deaths, while Woods pleaded guilty for causing one death. And while Woods assisted Bowers with the delivery of the methadone to Saylor, Bowers provided the drug that killed Saylor. Finally, Bowers does not present cogent argument on the nature of the offenses or his character in the context of Appellate Rule 7(B). We cannot say that Bowers' sentence is inappropriate in light of the nature of the offenses or his character.

Affirmed.

RILEY, J., and DARDEN, J., concur.

11