## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 15 2018, 9:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeremy K. Nix
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Janet M. (Davis) Sierra, | March 15, 2018 |
| *Appellant-Defendant,* | Court of Appeals Case No. 35A05-1711-CR-2552 |
| *v.* | Appeal from the Huntington Circuit Court |
| State of Indiana, | The Hon. Thomas M. Hakes, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 35C01-1301-FC-5 |

**Bradford, Judge.**

# Case Summary

[1] Between July and November of 2011 Appellant-Defendant Janet Sierra (then Davis) worked for Huntington Heating and Cooling ("the Company"). On one occasion, Sierra forged a customer's name to a loan application that happened to be for far more than the customer believed himself to be borrowing. On other occasions, Sierra accepted cash payments from customers that were never passed on to the Company. Sierra was convicted of one count of Class C felony forgery and four counts of Class D felony theft, and the trial court sentenced her to an aggregate term of fifteen years of incarceration, with seven suspended to probation. Sierra contends that the consecutive sentences imposed for her theft convictions violate limitations on sentencing for crimes arising out of a single episode of criminal conduct and that her sentence is inappropriately harsh. Because we disagree, we affirm.

# Facts and Procedural History

[2] Sierra was employed by the Company between July 30, 2010, and November 9, 2011, starting in customer service and later working in sales. In October of 2010, Michael Hall spoke to Sierra about installing a geothermal system and completed an application to finance the cost of installation. When Sierra informed Hall that he was not approved for financing, he contacted his father to cosign the application. Although Sierra initially told Hall that his father had not been approved either, she later contacted Hall to report that he had been approved and that Hall did not need to sign any additional paperwork. Hall did

not sign the credit application that was ultimately submitted to the Company, and the application that was submitted by Sierra misspelled Hall's name and misstated both the length of time he had been living at his residence and his income. As it happened, the loan application was approved; however, although Hall thought that he was borrowing $9500.00, the application submitted was for $18,000.00. Hall discovered that there was a problem when the financing company called him and told him that he owed approximately $20,000.00.

[3] Between June of 2011 and November 9, 2011, Sierra met separately with four homeowners or sets of homeowners, Nancy and David Rudy, Terry and Jennifer Dillingham, James Williams, and Jackie and John Hancock about installing geothermal units in their residences. Sierra reached agreements with the Rudys, the Dillinghams, Williams, and the Hancocks, and Sierra requested that each client pay in cash rather than by check, telling them that they would receive a discount thereby. On June 24, 2011, the Rudys made a $2000.00 cash payment to Davis. On July 19 and 29, 2011, the Dillinghams made two cash payments to Sierra of $7275.00 and $7261.42. On August 22, 2011, Williams made a $5000.00 cash payment to Sierra. On October 14 and 25, 2011, the Hancocks made two cash payments to Sierra of $7352.50 each. Although Sierra collected the cash payments, she never submitted them to the Company. When all was said and done, the damages to Sierra's victims totaled $29,135.80.

[4] On January 4, 2013, the State charged Sierra with one count of Class C felony forgery and four counts of Class D felony theft. On August 10, 2017, a jury

found Sierra guilty as charged.  At sentencing on October 9, 2017, the trial court ordered that Sierra pay restitution to Hall, the Rudys, the Dillinghams, Williams, and the Hancocks.  The trial court found, as mitigating circumstances, Sierra's lack of criminal history and that she has two children and an ill mother.  The trial court found, as aggravating circumstances, the serious harm done to the Company and the violation of the trust that had been placed in her.  The trial court found that the aggravating circumstances outweighed the mitigating and sentenced Sierra to seven years of incarceration (with three suspended) for forgery and to two years (with one suspended) for each theft conviction, to be served consecutively, for an aggregate sentence of fifteen years with seven suspended to probation.

# Discussion and Decision

## I.  Single Episode of Criminal Conduct

[5]   Sierra contends that her four thefts are all part of a single episode of criminal conduct.  When Sierra committed her thefts, as a general rule, if crimes were part of a single episode of criminal conduct, then the consecutive terms of imprisonment could not aggregate to an amount higher than that of the advisory sentence for the felony one class higher than the most serious crime.  Ind. Code § 35-50-1-2 (2011).

[6]   We conclude that the four thefts committed by Sierra were not simultaneous or contemporaneous in nature as to constitute a single episode of criminal conduct, as she alleges.  When a full account of a crime can be given without

referring to the other offenses, the offenses are not a single "episode of criminal conduct." *Tedlock v. State*, 656 N.E.2d 273, 276 (Ind. Ct. App. 1995). In *Smith v. State*, 770 N.E.2d 290 (Ind. 2002), the Indiana Supreme Court cited the *Tedlock* court's emphasis on "the 'simultaneous' and 'contemporaneous' nature of the crimes which would constitute a single episode of criminal conduct." *Id.* at 294 (quoting *Tedlock*, 656 N.E.2d at 276).

[7] With *Tedlock*'s approach in mind, the *Smith* Court concluded that even where the defendant's six forgeries occurred throughout the same afternoon, because they occurred at separate times and places, and with separate amounts of money, the conduct was not a single episode of forgery. *Id.* at 294. We reach the same conclusion in this case. The fact that Sierra's four thefts were similar in character does not mean that they, involving different victims and occurring at different locations on many separate days with separate amounts of money, constituted a single episode of criminal conduct. The trial court properly treated the thefts as not being part of a single episode of criminal conduct. We conclude that Sierra has failed to establish that her consecutive theft sentences run afoul of statutory limitations.

## II. Appropriateness of Sentence

[8] This Court will revise a sentence authorized by statute only "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). The question is not whether another

sentence is more appropriate, but whether Sierra's sentence is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). The "nature of the offense" refers to a defendant's actions in comparison with the elements of the offense. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The "character of the offender" refers to "general sentencing considerations and the relevant aggravating and mitigating circumstances." *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007).

Sierra has the burden of proving that her sentence is inappropriate in light of the nature of the offense and her character. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "[Deference to trial courts] should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

The nature of Sierra's offenses was that she stole from the customers of the company she worked for and which had placed her in a position of trust. The damages to her direct victims came to more than $29,000.00. As for the Company, Robert Zahm, President of the Company, indicated that the damage to its reputation caused by Sierra's actions was "brutal" and that the company suffered losses of $106,437.00 in 2011 and $221,542.00 in 2012 as a result. Appellant's App. Vol. III p. 67. Zahm wrote the trial court that the Company had lost over 100 good customers, the Company had to borrow $100,000.00 to keep operating, and Zahn had to delay his planned retirement by ten years

because of Sierra. Sierra's crimes damaged and seriously inconvenienced her direct victims and nearly put the Company out of business.

[11] As for Sierra's character, we cannot say that, despite her lack of other criminal convictions, it weighs in her favor. Despite the negative impact of her crimes, Sierra is unrepentant, characterizing the episode as a "misunderstanding" and a "tragic event in [her] life." Appellant's App. Vol. III pp. 65, 66. Sierra claimed that she "was unaware what I was doing was a criminal offense" and that her crimes were "mistakes[.]" Appellant's App. Vol. III p. 66. Sierra has yet to accept responsibility for her actions or appreciate their negative consequences, which does her no credit. The record also indicates that Sierra left the jurisdiction during this case (soon after an arrest warrant had been issued for her) and remained a fugitive from July of 2013 until March of 2017, when she was arrested in Florida. Moreover, as of sentencing in this case, Sierra had charges for forgery and theft pending and set for a plea hearing in another Indiana county. Given the negative impact of Sierra's crimes and her negative character, she has failed to establish that her fifteen-year sentence, with seven years suspended to probation, is inappropriate.

[12] We affirm the judgment of the trial court.

Robb, J., and Crone, J., concur.