Ronald G. **REYNOLDS,** Appellant (Defendant Below),

v.

**STATE of Indiana,** Appellee (Plaintiff Below).

No. 03A04–9502–CR–52.

Court of Appeals of Indiana.

Nov. 16, 1995.

---

Gregg J. Stark, Bruce E. Andis, Jeffrey D. Heck, Rosenthal & Stark, Indianapolis, for appellant.

Pamela Carter, Attorney General, James D. Dimitri, Deputy Attorney General, Indianapolis, for appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Ronald G. Reynolds appeals his sentence to serve sixty years, imposed upon his conviction after he pleaded guilty to three counts of burglary as a class B felony and one count of resisting law enforcement. We affirm.

*ISSUES*

Whether Reynolds' sentencing by the trial court was erroneous because:

1. consecutive sentencing for the three burglary counts violates statutory provisions;

2. the sentence imposed was inadequately justified by the court so as to be an abuse of discretion;

3. sentencing followed an inadequate advisement by the court to Reynolds and acceptance by the court of a "defective" plea agreement; and

4. sentencing followed the trial court's erroneous finding of a factual basis for Reynolds' guilty plea.

## FACTS

During the day of May 6, 1994, Reynolds and a cohort burglarized the homes of George and Ruth Blount, Max Bode, and Roger Clark in rural Bartholomew County. On the third occasion a deputy sheriff observed Reynolds in the act, arriving during the course of the Clark burglary—at which point Reynolds fled.

Reynolds was charged on eight criminal counts; he pleaded not guilty to all counts. One month before his scheduled trial date, Reynolds filed a motion asking the court for a change of plea hearing. At the September 27, 1994 change of plea hearing, Reynolds tendered his waiver of rights, withdrew his pleas of not guilty, and pleaded guilty to the three burglary counts and to the resisting law enforcement count. At the close of the hearing, the court accepted Reynolds' pleas and convicted him on all four counts.

After the sentencing hearing, the court ordered Reynolds to serve twenty years on each burglary count, each sentence to be served consecutively. A one year sentence for resisting law enforcement was to be served concurrent to the burglary sentences.

## DECISION

■ An appellate claim of sentencing error is subject to review for abuse of trial court discretion; reversal results "only if there has been a manifest abuse of discretion." *Fugate v. State* (1993), Ind., 608 N.E.2d 1370, 1374.

### 1. *Consecutive Sentences*

Reynolds frames his first issue as trial court error "in finding three criminal episodes leading to a total sentence in excess of the presumptive sentence for the next higher sentencing class." Reynolds' Brief at 7. Reynolds directs us to Ind.Code 35–50–1–2(c), which states that a court "may order terms of imprisonment to be served consecutively" but—except for murder and certain felonies resulting in serious bodily injuries—

the total of the consecutive terms of imprisonment ... to which the defendant is sentenced for felony convictions arising out of an *episode* of criminal conduct shall not

exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted. (Emphasis added.)

Under the statute, a single episode involving B felonies would warrant consecutive imprisonment only up to twenty-five years, the presumptive sentence for an A felony.

■ Conceding that Indiana courts had not directly addressed the definition of "episode," Reynolds cites various sources in an attempt to persuade us that the facts of his three May 6th burglaries constitute but one episode. The State argues that the above provision, enacted in 1994, was not in effect at the time Reynolds committed the burglaries and, therefore, he is not entitled to its application.

Quite recently we have addressed both contentions. First:

under the doctrine of amelioration, when the penalty for a crime is decreased by an ameliorative amendment enacted after the commission of the crime but before the defendant's sentencing, the defendant may take advantage of the ameliorative amendment.

The 1994 amendment ... which imposed a previously nonexistent limitation upon the trial court's authority to impose consecutive sentences is ameliorative in nature. Therefore, it is appropriately applied in the present case.

*Tedlock v. State* (1995), Ind.App., 656 N.E.2d 273, 275–76.

As to the meaning of "episode," we look to the 1995 legislature that defined the phrase "episode of criminal conduct" to mean "offenses or a connected serious of offenses that are closely related in time, place, and circumstance." P.L. 304–1995 (Effective July 1, 1995). Thus, we held the legislature intended the term "episode" in the 1994 amendment to have the definition provided in the 1995 amendment. The *Tedlock* case illuminated our legislature's definition:

'[T]he singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete

account of one charge cannot be related without referring to details of the other charge.'

'Episode' means 'an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series.' This would cover the *simultaneous* robbery of seven individuals, the killing of several people with successive shots from a gun, the successive burning of three pieces of property, or such *contemporaneous* and related crimes as burglary and larceny, or kidnapping and robbery.

656 N.E.2d at 276, (quoting *State v. Ferraro* (1990), 8 Haw.App., 284, 800 P.2d 623, 629 (citations omitted)), and at 628 (quoting commentary from ABA Standard 12–2.2(a)) (emphasis added in *Tedlock* ).

■ According to Reynolds' testimony, he and his companion broke and entered the Bode home, stole items, and left. They broke and entered the Blount home on another street, stole property from that residence, and left. They then broke and entered the Clark home and were in the process of taking property therefrom when they encountered a deputy, who ordered them to stop, and they fled. Each burglary took place as a distinct episode in itself; each can be described without referring to details of the others.

The court did not abuse its discretion in finding the three burglaries not to be a single episode and, therefore, ordering the sentences to be served consecutively.

### 2. *Court's Justification of Maximum and Consecutive Sentences*

In his second argument, Reynolds claims "the trial court abused its discretion by its failure to provide adequate justification to impose a maximum sentence of twenty years on each count of burglary to be served consecutively for a total of a sixty-year executed sentence." Reynolds' Brief at 11.

■ The decision to increase a sentence "is within the discretion of the trial court and will not be set aside unless it is manifestly unreasonable." *Holmes v. State* (1994), Ind., 642 N.E.2d 970, 973.

■ Reynolds asserts the trial court gave "absolutely no credence" to his having completed intensive drug counseling while in jail on these charges and failed to consider his "young age" and "the fact that he had spared the State and victims the expense and time of a trial." Reynolds' Brief at 12, 15. The finding of mitigating factors "is discretionary with the trial court," and the "trial court is not required to find the presence of mitigating factors." *Fugate, supra,* at 1374.

Reynolds cites *McCollum v. State* (1991), Ind., 582 N.E.2d 804, 817, for the proposition that the trial court may enhance a sentence, impose consecutive terms, or do both in light of aggravating circumstances, but when it does so the record must show that the sentence was based on consideration of factors of the sentence to the objectives to be served by that sentence. Reynolds challenges the trial court's enunciation of aggravating factors considered in sentencing as lacking specificity. To that end, Reynolds also refers us to *May v. State* (1991), Ind.App., 578 N.E.2d 716, 723, wherein reversal resulted when the trial court merely "recite[d] the statutory factors" without "relat[ing] in some detail the facts peculiar to the defendant and the crime." The *May* sentencing decision was explained only as follows:

The Court finds that aggravation for enhancing the penalties beyond the presumptive and for running sentences consecutively instead of concurrently would be the risk that the defendant would commit another crime, his prior criminal history, personality and his nature, nature and circumstances of the crimes committed in this case, the defendant's prior criminal record, the statements made by the victims in the case. The Court further finds in regard to sentencing that imposition of a reduced sentence or suspension of the sentence with extensive probation would depreciate the seriousness of the crimes committed, the defendant is in need of long term imprisonment, the defendant's record and

criminal activity indicates a very slight likelyhood [sic] of rehabilitation.

*Id.* at 722–23.

We look at the trial court's statement on sentencing Reynolds to see whether it "mirrors" the inadequacy of the *May* explanation, as Reynolds claims.

> The Court is required to consider a number of factors under the Indiana Code. The first factor that the Court is required to consider is the risk that the person with [sic] commit another crime. Mr. Reynolds says now that he has a cocaine addiction. Well he may very well have one, the problem with that is that he was committing burglaries and thefts before he got on cocaine by his own testimony. So it appears that if he were even to get that under control he would still be breaking into peoples [sic] homes. So the risk that he could commit another crime is very high. The nature and circumstances of the crimes committed uh are that they were random, multiple, without regard to the persons in the homes. They did not apparently intend to cause any harm to anyone since they did check to see if there was anybody there. Persons [sic] prior criminal record and character. Well Mr. Reynolds your record is pretty bad. It would appear that you are, combining your record with your employment history, you are a professional thief, or at lease [sic] you have attempted to be. So that prior record and that prior char . . . or your character indicate that you just like to steal from people. Those are the factors that the Court is required to consider. The aggravating factors that the Court is permitted to consider are that the person has recently violated conditions of any probation, which is true in this case. Mr. Reynolds was on probation at the time that these offenses took place. He does have a history of criminal and delinquent activity. He is in need of correctional rehabilitative treatment that can best be provided by commitment to the uh Penial [sic] facilities in the Department of Corrections. Imposition of a reduced or suspended sentence would depreciate the seriousness of the crimes. So those are the aggravating circumstances. The only possible mitigating circumstance might be that the crimes did neither cause or threaten serious harm to persons, but it did to property. Based upon these considerations the Court will order that the defendant will receive twenty years with regard to count one, twenty years with regard to count five, twenty years with regard to count eight and one year with regard to count four. These will be ran [sic] consecutively one to the other and there will be no suspension of any time, except for count four which will be run concurrent with the other two. . . . The Court considers the same aggravating circumstances to warrant the consecutive sentences.

(R. 119–23).

■ Unlike *May,* the trial judge's sentencing statement in the instant case was grounded in facts specific to Reynolds and to these crimes. We cannot agree that the trial court "fail[ed] to observe the dictates of" *May.* Rather, we find these facts more like *McCollum, supra,* where the trial court's finding "that appellant had a long history of crime and drug use, that there was a likelihood that the crime would reoccur, that appellant was in need of correctional treatment, and that there was some history of violence" was a sufficient showing of aggravating circumstances to support an enhancement of presumptive sentences and ordering consecutive terms. 582 N.E.2d at 817. Further, there is "no constitutional or statutory prohibition against using the same factors to both enhance a sentence and impose consecutive sentences." *Id.* The trial court did not abuse its discretion in imposing the maximum sentence for each count of burglary and ordering that the sentences be served consecutively.

3. *Guilty Plea*

Reynolds next claims the "trial court failed to adequately advise the defendant of his rights and the possible sentence to be imposed where the court chose to accept the terms of a defective plea agreement." Reynolds' Brief at 17.

■ The State's initial response is to note the general rule that a conviction based on a

guilty plea cannot be challenged on direct appeal but requires utilizing post-conviction relief procedures. However, the State notes the recent case of *Tumulty v. State* (1995), Ind.App., 647 N.E.2d 361. Therein, we considered a challenge to the adequacy of the basis for a plea to a habitual offender on direct appeal—partly as a matter of judicial economy, because the appeal also raised two sentencing issues. For the same reason, we do so here.

■ Reynolds argues his guilty plea could not have been knowing because the record shows he "did not adequately understand the likelihood of a sixty-year jail sentence being imposed against him." Such is shown, he says, when at the sentencing hearing he stated "... that as soon as he concluded his sentencing hearing, it was his intention to get married and raise a family." Reynolds' Brief at 17. Asked by his counsel when he was scheduled to marry the mother of his child, he answered "Soon as I leave here." (R. 93). Asked again about his marriage plans, he said "Soon as I get here, we're going to get married and raise our family together." *Id.* His answers are equivocal as to his expectation of timing and use of the word "here." That he harbored a hope of being available to marry soon does not mean he did not understand the possible maximum sentence.

Reynolds points to the fact that his affidavit spelling out the range of possible penalties was signed a mere one day before the plea hearing. We fail to understand how a length of time suggests a lack of knowledge—if he did not understand the statement of maximum sentences on September 26, 1994, when he signed it, would the plea hearing being held a month later evidence his understanding?

Because the record does not contain a written plea agreement which statute[1] requires be filed with the court, Reynolds argues: 1) there is "no evidence of what recommendations the prosecuting attorney and Defense Counsel have made to the Court in regard to the guilty plea in question," and 2) "there exists a serious issue as to whether Defendant had the opportunity to adequately

understand his rights in order to knowingly and voluntarily enter into the guilty plea in question." Reynolds' Brief at 19.

As to the former, the record reveals the following colloquy.

Court: [Prosecuting attorney], what is the arrangement in this matter?

[Prosecuting attorney]: Judge, the arrangement is that upon the defendant's plea of guilty to count one, count four, count five and count eight the State will move to dismiss the remaining uh causes of action, I mean counts in this cause of action. There also may be some additional crimes that the State could uh file based upon uh the testimony or the factual basis but together by the co-defendant, Smith. Uh, with regard to some of the other things that occurred on this date and we are intending that this be a package matter. And I think that there, there was a residence entered by, by the defendant and to, Mr. Smith, uh to use a telephone to make a telephone call that was not charged. Um and that's, that's one of the specifically one of the counts that we're or one of the incidences [sic] we're referring to that was not sufficient evidence to charge them before Mr. Smith uh gave his testimony in Court. And I, was there something else, Jane?

[Defense counsel]: I believe that we agreed that even if there was a basis for an habitual offender charge that, that would not be filed at this time.

[Prosecuting attorney]: Yes, there's, it is the State's position that uh that there is not an ability to file habitual criminal information at this time based upon my review, but maybe the defendant has a different opinion, but uh we will not do that.

Court: Okay. Anything else?

[Prosecuting attorney]: No, not that I am aware of.

Court: [Defense counsel], is that your understanding of the arrangement?

[Defense counsel]: Yes, sir.

(R. 68–70). Hence, the arrangement recommended is evidenced.

---

1. I.C. 35–35–3–3(a).

Moving to the question of Reynolds' understanding, the record does contain Reynolds' signed "Waiver of Rights, Withdrawal of Plea of Not Guilty and Plea of Guilty." Such recites Reynolds' constitutional rights as a criminal defendant and states that Reynolds understands that by withdrawing his not guilty pleas and entering guilty pleas, he is waiving those rights. The document also states he understands the possible maximum sentence listed. Further, at the change of plea hearing requested· by Reynolds, the court questioned Reynolds extensively to confirm his understanding of the charges against him and of the rights he was waiving. The court explained that class B felonies have a maximum sentence of twenty years imprisonment, and that with the misdemeanor:

> if you received maximum sentences on each you would be looking at a maximum of sixty one years in prison. Do you understand that?
>
> [Reynolds]: Yes, sir.

(R. 66–67).

The State directs our attention to *Davis v. State* (1981), Ind.App., 418 N.E.2d 256. Davis challenged his guilty plea as defective because the written agreement was not filed with the court, as required by the statutory predecessor to I.C. 35–35–3–3. We declared the purpose underlying the statutory requirement of the written plea agreement was "to insure that a defendant does not base his guilty plea upon certain promises made by the prosecutor where the judge has in fact not accepted the state's recommendation." *Id.* at 260. Because the agreement "merely stated that the charge of theft would be dismissed and no habitual criminal charge would be brought by the state," and no recommendations were made regarding sentencing, we concluded that it was not reversible error for the court to accept Davis' guilty plea without a written filing, as Davis suffered no harm. *Id.*

As in *Davis,* the Reynolds agreement contemplated the dismissal of certain charges and no filing of a habitual criminal charge. Likewise, the agreement made no sentencing recommendation. Thus, Reynolds received exactly the terms to which he agreed and

cannot show harm. The record evidences Reynolds' guilty plea was made with knowledge of his rights and of the effect of his plea. "To avail himself of an error a party must both suffer harm to a right he possesses and suffer prejudice to himself as a result." *Jones v. State* (1976), 265 Ind. 447, 355 N.E.2d 402, 405. Reynolds has shown neither.

### 4. *Factual Basis*

Finally, Reynolds claims the trial court erred in finding a factual basis for his pleading guilty to burglary, because "the prosecution failed to establish" an element of the crime: "that the defendant broke into a building." Appellant's Brief at 20. The State again contests the propriety of Reynolds' challenge to his guilty plea on direct appeal. As before, in the interests of judicial economy, we proceed to the merits of his claim.

Reynolds directs us to his testimony at the change of plea hearing, where he "never stated that he broke into any house" but rather stated "that Danny Smith kicked in the door." *Id.* He further points to each information on the burglary charges as alleging he "broke into dwellings." *Id.* Because the allegations were "unsupported by any testimony or other evidence," he concludes, the trial court erred in finding a factual basis for a change of plea to guilty and accepting the plea. *Id.*

An adequate factual basis for the acceptance of a guilty plea may be established in one of four ways:

> 1) by the State's presentation of evidence on the elements of the charged offenses, 2) the defendant's sworn testimony regarding the events underlying the charges, 3) the defendant's admission of the truth of the allegations in the information read in court, or 4) the defendant's acknowledgement that he understands the nature of the crimes charged and that his plea is an admission of the charges.

*Minor v. State* (1994), Ind.App., 641 N.E.2d 85, 89, *trans. denied* (citing *Carney v. State* (1991), Ind.App., 580 N.E.2d 286, 289, *trans. denied* ).

At the change of plea hearing, the court read the allegations of the Bode burglary ("that you did break and enter the dwelling of ... Max Bode"), the Clark burglary ("that you did break and enter the dwelling of ... Roger Clark"), and the Blount burglary ("that you did break and enter the ... dwelling of George and Ruth uh Blount"). (R. 63–65). The court asked Reynolds whether he understood that by pleading guilty he was admitting that these facts were true. Reynolds answered, "Yes, sir." (R. 65). The State asked Reynolds whether it was true "that you did break and enter the dwelling of ... Max Bode." (R. 74). Reynolds answered, "Yes." *Id.* The State asked him whether it was true "that you did break and enter the dwelling of ... Roger Clark." (R. 76). He answered, "Yes." (R. 77). The State asked him whether it was true "that you did break and enter the ... dwelling of George and Ruth Blount." (R. 79). He answered, "Yes." (R. 80). The court referred to Reynolds' "Waiver of Rights, Withdrawal of Plea of Not Guilty and Plea of Guilty" and asked whether Reynolds had signed it, had reviewed it with his attorney before signing it, and understood what it said. Reynolds answered, "Yes, sir" to each question. (R. 83). The document stated Reynolds understood that by entering a plea of guilty he was "admitting the truth of all facts alleged" in the information. (R. 48).

Reynolds' admission of the facts alleged in the information charging him with three counts of burglary serves to establish an adequate factual basis for the trial court to have accepted his plea of guilty to three counts of burglary.

We affirm.

RILEY and SULLIVAN, JJ., concur.