**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**C. BRENT MARTIN**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RUSSELL W. YERDEN,                )
                                  )
    Appellant-Petitioner,         )
                                  )
        vs.                )    No. 49A02-1110-PC-1010
                                  )
STATE OF INDIANA,                 )
                                  )
    Appellee-Respondent.          )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
The Honorable Stanley E. Kroh, Master Commissioner
Cause No. 49G03-9102-PC-24953

**May 10, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Russell Yerden appeals the denial of his petition for post-conviction relief. We affirm in part, reverse in part, and remand.

## Issue

Yerden raises two issues, which we consolidate and restate as whether he received ineffective assistance of appellate counsel.

## Facts

In 1991, Yerden, his girlfriend, Bernice Henson, and her brother, Michael Henson, came up with a plan to act like hitchhikers and, while armed with a sawed-off shotgun, rob the people who gave them a ride. On their way to solicit a ride, Yerden and Michael got into an argument, and Michael left.

Yerden and Bernice continued the plan, and Jayson Bergstresser offered them a ride. Yerden brandished the shotgun and struck Bergstresser on the face. Yerden asked Bergstresser how much money he had, and Bergstresser told him fifty dollars. Bergstresser grabbed the barrel of the gun and struggled with Yerden for possession of it. Ultimately, Yerden regained possession of the gun, opened the car door, threw the gun out, and jumped out of the car. Bernice jumped out too. Yerden retrieved the shotgun and fired at Bergstresser's car.

Yerden insisted they find another victim, and David McMahon was the next person to offer them a ride. Once inside the car, Yerden pulled the gun on McMahon and demanded to know how much money he had. McMahon threw his money into Bernice's lap. Yerden ordered McMahon to drive to a certain area and park the car. Bernice got

2

out of the car and, as she left, she heard gun shots and saw Yerden dragging McMahon's body up a hill. Yerden ran after Bernice, telling her he had killed McMahon.

Yerden and Bernice were apprehended, and Yerden was charged with murder, felony murder, and Class A felony robbery for the attack on McMahon. Yerden was separately charged with Class A felony attempted murder and Class B felony attempted robbery for the attack on Bergstresser. The State then moved to join the charges, which the trial court granted. Yerden filed an interlocutory appeal challenging the joinder. We affirmed, observing:

> Our examination of the record reveals that the charges arose from two separate attacks which took place early the same morning, within a short period of time, and in close proximity to each other. The record indicates that Yerden and an accomplice planned to commit a spree of robberies by portraying themselves as hitchhikers. The record shows that Yerden planned to rob the driver of the vehicle at gunpoint after the driver pulled the vehicle over to the side of the road.
> Based on this evidence, we conclude that the trial court could reasonably find that the attacks were the same or of similar character which stemmed from a motive and common modus operandi and could be joined pursuant to I.C. 35-34-1-9.

Yerden v. State, No. 49A02-94-04-CR-233, slip op. at 3 (Ind. Ct. App. Dec. 7, 1994).

Yerden was tried in May 1995, and a jury found him guilty as charged. On June 14, 1995, the trial court sentenced Yerden to sixty years for murder,[1] twenty years for robbery, which was reduced to a Class B felony, fifty years for attempted murder, and twenty years for attempted robbery and ordered the sentences to be served consecutively for a total sentence of 150 years.

---

[1] The trial court merged the felony murder and murder convictions.

Yerden raised four issues on direct appeal: 1) whether the trial court properly denied his motion to suppress; 2) whether the jury instruction on attempted murder was fundamental error; 3) whether the trial court erred in consolidating the cases; and 4) whether he received ineffective assistance of appellate counsel on the interlocutory appeal. Yerden filed his Appellant's Brief on April 11, 1996, and our supreme court affirmed his convictions in Yerden v. State, 682 N.E.2d 1283 (Ind. 1997).

On April 20, 2010, Yerden filed an amended petition for post-conviction relief alleging ineffective assistance of appellate counsel. Yerden asserted that appellate counsel was ineffective for not challenging the consecutive sentences, the fifty-year attempted murder sentence, and the jury instruction on the alibi defense.

After a hearing, the post-conviction court concluded that Yerden did not establish that appellate counsel was ineffective for not raising the issue of consecutive sentences because the crimes were not an episode of criminal conduct. The post-conviction court also concluded that Yerden did not establish appellate counsel was ineffective for challenging the alibi instruction as fundamental error. Finally, although the post-conviction court concluded that Yerden did not establish appellate counsel was ineffective for failing to challenge the fifty-year sentence for attempted murder, the post-conviction court applied the statute in effect at the time Yerden was sentenced in accordance with the doctrine of amelioration and revised the attempted murder sentence from fifty to forty-five years. Yerden now appeals.

## Analysis

"The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." Kubsch v. State, 934 N.E.2d 1138, 1144 (Ind. 2010). Because a petitioner appealing the denial of post-conviction relief is appealing from a negative judgment, to prevail on appeal, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. Further, although we do not defer to a post-conviction court's legal conclusions, the court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made. Id.

"To establish a post-conviction claim alleging the violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish before the post-conviction court the two components set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)." Id. at 1147. First, a defendant must show that counsel's performance was deficient by establishing that counsel's representation fell below an objective standard of reasonableness and that "'counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment.'" Id. (quoting Strickland, 466 U.S. at 687, 104 S. Ct. at 2064). A defendant must also show that the deficient performance prejudiced the defense by establishing there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. "Further, counsel's

performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." Id.

The standard for gauging appellate counsel's performance is the same as that for trial counsel; therefore, to prevail on an ineffective assistance of counsel claim, Yerden must show both deficient performance and resulting prejudice. See Pruitt v. State, 903 N.E.2d 899, 928 (Ind. 2009). "Ineffective assistance of appellate counsel claims fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well." Carter v. State, 929 N.E.2d 1276, 1278 (Ind. 2010). Yerden's claims involve waiver for appellate counsel's failure to raise issues on direct appeal.

Ineffectiveness is rarely found in such cases. Bieghler v. State, 690 N.E.2d 188, 193 (Ind. 1997), cert. denied, 525 U.S. 1021. "[W]hen assessing these types of ineffectiveness claims, reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable." Id. at 194. In assessing counsel's performance, we look to see whether any unraised issues were significant and obvious upon the face of the record and, if so, whether any such issues were clearly stronger than the issue or issues appellate counsel decided to raise on direct appeal. Id. "For purposes of ineffective assistance of appellate counsel claims, we judge the reasonableness of appellate counsel's strategic decisions based upon precedent that was available at the time the brief was filed." Williamson v. State, 798 N.E.2d 450, 454 (Ind. Ct. App. 2003), trans. denied. If this analysis establishes deficient performance on counsel's part, we then analyze whether the issue or issues that counsel failed to raise clearly would have been more

6

likely to result in reversal or a new trial than the issue or issues that counsel actually raised. Id. The ultimate issue under the prejudice prong is whether, but for counsel's error or errors, there is a reasonable probability that the outcome of the defendant's direct appeal would have been different. Id.

### I. Consecutive Sentences

Although Yerden committed the offenses in 1991, he was sentenced in June 1995, after Indiana Code Section 35-50-1-2 was amended to impose a previously nonexistent limitation on a trial court's discretion to impose consecutive sentences. See Tedlock v. State, 656 N.E.2d 273, 275 (Ind. Ct. App. 1995). The relevant portion of the statute, as amended in 1994, provided:

> The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for murder and felony convictions for which a person receives an enhanced penalty because the felony resulted in serious bodily injury if the defendant knowingly or intentionally caused the serious bodily injury, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Ind. Code 35-50-1-2(a) (1994).

Yerden argues that, because he was entitled to the ameliorative effect of the 1994 amendment, his consecutive sentences for the robbery of McMahon and the attempted murder and attempted robbery of Bergstresser were improper. Yerden contends that had

7

this issue been raised on direct appeal, he would have been entitled to relief. According to Yerden, the sentence for these three offenses should be reduced from ninety years to fifty years, reducing his total sentence to 110 years.

Citing Richards v. State, 681 N.E.2d 208, 213 (Ind. 1997), the State agrees that "the doctrine of amelioration permits [Yerden] to benefit from the later statute if it would otherwise apply to him." Appellee's Br. p. 8 n.2. In that case, our supreme court concluded that the amended statute applied to a 1995 sentencing for offenses committed in 1992 because the statute was "clearly ameliorative." Richards, 681 N.E.2d at 213. Although our supreme court did not decide Richards until 1997, at the time of Yerden's July 1996 direct appeal, we had decided Tedlock, in which we concluded that the 1994 amendment applied to crimes Tedlock committed between 1989 and 1991. Tedlock, 656 N.E.2d at 276 (affirming consecutive sentences because the convictions did not constitute one criminal episode); see also Reynolds v. State, 657 N.E.2d 438, 440-41 (Ind. Ct. App. 1995) (acknowledging Tedlock's analysis and concluding that the defendant's conduct did not constitute an episode of criminal conduct).

Based on Tedlock and Reynolds, this unraised issue was significant and obvious upon the face of the record. However, to determine whether this issue was stronger than the other issues raised on direct appeal, we must also determine whether Yerden's conduct would have been considered an episode of criminal conduct at the time of his appeal.

Prior to Yerden's June 1995 sentencing, there had been no definition of "episode." Effective July 1, 1995, the statute was amended again defining "episode of criminal

8

conduct" as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35-50-1-2(b) (1995). In Tedlock, we held, "the legislature intended that the term 'episode' as used in the 1994 amendment have the definition provided in the 1995 amendment as set out above." Tedlock, 656 N.E.2d at 276.

Applying this definition and considering whether a complete account of one charge could be related without referring to the details of the other charge, we concluded that Tedlock's four securities fraud convictions were not a single criminal episode because the crimes were committed against different victims at different times over approximately two years. Id. In Reynolds, the defendant and his companion broke into two different homes on two different streets, stole property, and left and then broke into a third house and were in the process of taking property when they were interrupted by police and fled. Reynolds, 657 N.E.2d at 441. We concluded that, because each burglary took place as a distinct episode and each could be described without referring to the details of the others, the trial court did not abuse its discretion in ordering consecutive sentences. Id.

We reached a contrary conclusion in Trei v. State, 658 N.E.2d 131, 132 (Ind. Ct. App. 1995). In that case, Trei confronted two teenagers in a park, held one at knife point, led them down a path to a wooded area, ordered them to the ground, and had sexual intercourse with one of them. Trei, 658 N.E.2d at 132. Trei was charged with and pled guilty to one count of Class A felony sexual misconduct with a minor and two counts of Class B felony criminal confinement. Id. at 133. On appeal, Trei challenged his sixty-

9

five-year sentence, which included consecutive sentences for the Class A felony and one of the Class B felonies. Id. In determining whether Trei's sentence was proper, we concluded, "[t]he facts clearly indicate that Trei's convictions arose during the course of one criminal episode of conduct." Id. at 134. After observing that Trei's consecutive sentences must not exceed fifty-years, we remanded for re-sentencing. Id.

Here, Yerden argues that the robbery of McMahon and attempted robbery and attempted Murder of Bergstresser were a single episode of criminal conduct. The State argues that the offenses were three separate offenses.

We agree with the State that the robbery of McMahon is separate from the crimes against Bergstresser. Although close in time, Yerden had completed the attack on Bergstresser when he again pretended to be a hitchhiker, accepted McMahon's offer of a ride, and robbed him. Even if, as he contends, Yerden selected another victim because the robbery of the Bergstresser had been unsuccessful, the attack on McMahon could be described without reference to the attack on Bergstresser. Based on Tedlock and Reynolds, appellate counsel reasonably could have believed that this challenge to consecutive sentences would not have been successful and would not have been stronger than the other issues raised on direct appeal.

This conclusion is not altered by our analysis in our initial opinion regarding the joinder of charges because, as Yerden acknowledges, "whether multiple counts are connected for purposes of severance or whether they are connected as a single criminal episode for purposes of the limitations of I.C. § 35-50-1-2 are two separate inquiries." Appellant's Br. p. 13 (emphasis omitted). Although the attacks against McMahon and

10

Bergstresser were committed as part of a common plan, they are two distinct criminal episodes.

The distinction between the attempted robbery and attempted murder of Bergstresser, however, is a more difficult question. The State asserts that between the commission of the attempted robbery and the commission of the attempted murder Yerden leapt from the car and Bergstresser drove a block with Bernice in the car before she jumped out. According to the State, "Each of these crimes occurred in different places and can be discussed without reference to the other. Even though they occurred within minutes of one another, they do not constitute a single episode of criminal conduct . . . ." Appellee's Br. p. 12.

We disagree. Bergstresser was the victim of both offenses, which occurred close in time, place, and circumstance. Moreover, the attempted murder occurred after the attempted robbery failed. As such, the attempted murder cannot be related without referring to the details of the attempted robbery. Even if, as the State argues, the two offenses "involved wholly separate conduct," Yerden committed the two offenses during an episode of criminal conduct. Id. at 11. Thus, Yerden's consecutive sentences for these offenses were subject to the limitation in Indiana Code Section 35-50-1-2, and this issue was clearly stronger than the unsuccessful issues raised on direct appeal.

As for prejudice, Yerden was originally sentenced to consecutive sentences of fifty years for the attempted murder and twenty years for the attempted robbery.[2] According to Yerden, his consecutive sentences for the two offenses should have been capped at

---

[2] The post-conviction court reduced Yerden's attempted murder sentence from fifty to forty-five years.

11

fifty years, which was the presumptive sentence for murder, the next-highest class of felony. Contrary to the post-conviction court's conclusion, Yerden was prejudiced by the failure to raise this issue. We remand for the post-conviction court to reduce Yerden's consecutive sentences for attempted robbery and attempted murder to fifty years. This sentence is to run consecutive to Yerden's unaltered sentences for the robbery and murder of McMahon for a total sentence of 130 years.

## II. Alibi Instruction

Yerden argues that appellate counsel's failure to challenge final Instruction 9(B) as fundamental error constituted deficient performance and, had it been raised on direct appeal, there is a reasonable probability that his murder and robbery convictions would have been reversed. This instruction provided:

> The defendant has offered the defense of ALIBI in this case. In criminal law, "alibi" means "elsewhere" or "in another place." It is a mode of defense to a criminal prosecution where the party accused, <u>in order to prove he could not have committed the crime with which he is charged</u>, offers evidence to show that he was in another place at the time the alleged crime was committed. This is a legitimate and proper defense and evidence relative thereto has been offered from the witness stand on behalf of the defendant. This evidence should be considered by you along with and in the light of all the other evidence in this case, giving it such weight and credence as you believe it warrants; and, after such consideration, <u>should the evidence of alibi create a reasonable doubt in your minds as to the guilt of the defendant</u> on any one or more of the offenses charged, then you should find the defendant not guilty of such offense or offenses.

Ex. A p. 59 (capitalization altered) (emphases added).

Yerden contends that this instruction would lead a reasonable juror to believe Yerden had to prove he did not commit the crime by showing reasonable doubt. See Sandstrom v. Montana, 442 U.S. 510, 519, 99 S. Ct. 2450 (1979) (reversing conviction where, in a case in which intent was an element of the crime charges, instructing the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts" violated the 14th Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt). The Sandstrom court held, "Because David Sandstrom's jury may have interpreted the judge's instruction as constituting either a burden-shifting presumption . . . or a conclusive presumption . . . and because either interpretation would have deprived defendant of his right to the due process of law, we hold the instruction given in this case unconstitutional." Id. at 524, 99 S. Ct. at 2459.

We do not believe this unraised issue was significant and obvious upon the face of the record. First, Yerden did not object to this instruction at trial; therefore, to have been successful on direct appeal, it would have been necessary to show fundamental error. Olson v. State, 563 N.E.2d 565, 567 (Ind. 1990). To fall within the fundamental exception, "the error must be such that if not rectified it would deny the defendant fundamental due process." Id.

Further, in Williams v. State, 181 Ind. App. 526, 529, 392 N.E.2d 817, 819 (1979), we addressed the propriety of the same[3] instruction and concluded, "[a]lthough the

_____

[3] Although the instructions are not identical, they are substantively the same. The Williams instruction provided:

> In criminal law "Alibi" means "elsewhere" or in another place." It is a
> mode of defense to a criminal prosecution where the party accused, in

13

instruction could have been more carefully worded so as to more clearly instruct the jury on the issues of burden of proof and reasonable doubt as they pertained to appellant's alibi defense, we find no error." We reasoned that the same instruction was quoted with approval by our supreme court in Freeman v. State, 249 Ind. 211, 231 N.E.2d 246 (1967) and that the other instructions, when read together, provided "strong language" on the burden of proof. Williams, 181 Ind. App. at 529, 392 N.E.2d at 819.

Even if the issue raised in Freeman is distinguishable from the issue in Williams, other instructions clearly defined the State's burden of proof. Specifically, preliminary Instruction No. 3, final Instruction No. 10, and final Instruction No. 12 clearly explained the presumption of innocence and the State's burden of proof. Given the hurdle of establishing fundamental error and our decision in Williams, we cannot say that appellate counsel overlooked an issue that was significant and obvious upon the face of the record.

---

order to prove he could not have committed the crime with which he is charged, offers evidence to show that he was in another place at the time the crime was committed. This is a legitimate and proper defense and evidence relevant thereto has been offered from the witness stand on behalf of the defendant. This evidence should be considered by you along with and in light of all the other evidence in the case, giving it such weight and credence as you believe it warrants; and, after such consideration, should the evidence of Alibi create a reasonable doubt in your minds as to the guilt of the defendant then you should find the defendant not guilty of such offense.

Williams, 181 Ind. App. at 528-529, 392 N.E.2d at 818-819 (emphasis added in Williams).
    Yerden argues that the Williams instruction is distinguishable because it did not include the language, "should the evidence of alibi create a reasonable doubt in your minds as to the guilt of the defendant . . . ." Ex. A p. 59. Yerden contends, "this additional offending language pushes the instruction in Mr. Yerden's case beyond what is acceptable under the Federal and the Indiana constitution." Appellant's Reply Br. p. 3. However, because the Williams instruction did in fact include this language, this argument is unavailing.

14

As such, the post-conviction court properly concluded that Yerden did not establish deficient performance on this basis.

## Conclusion

Appellate counsel was ineffective for not challenging the imposition of consecutive sentences for the attempted robbery and attempted murder of Bergstresser. Because these two offenses were an episode of criminal conduct, the consecutive sentences for these offenses should have been capped at fifty years by Indiana Code Section 35-50-1-2. Therefore, we reverse and remand for the correction of Yerden's sentence in accordance with this opinion. Yerden, however, did not establish that the post-conviction court's conclusions regarding the robbery sentence or the alibi instruction were clearly erroneous. We affirm in part, reverse in part, and remand.

Affirmed in part, reversed in part, and remanded.

FRIEDLANDER, J., and MAY, J., concur.