

I N T H E

# Court of Appeals of Indiana

Bruce A. Waldon,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Apr 16 2025, 9:12 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

April 16, 2025

Court of Appeals Case No.
24A-CR-1824

Appeal from the Tippecanoe Superior Court

The Honorable Steven P. Meyer, Judge

Trial Court Cause No.
79D02-0206-FC-46

**Opinion by Judge Tavitas**
Chief Judge Altice and Judge Brown concur.

**Tavitas, Judge.**

## Case Summary

[1] Following a jury trial more than twenty years ago, Bruce Waldon was convicted of several offenses, including two counts of burglary and two counts of theft for incidents that occurred over the course of one night. At his first sentencing hearing, Waldon argued that the offenses constituted a single episode of criminal conduct and, thus, consecutive sentences were limited by statute. The trial court disagreed and imposed consecutive sentences for these convictions.

[2] Multiple appeals, post-conviction proceedings, and resentencing hearings followed over the next twenty years. At the fourth sentencing hearing, the trial court upheld its original finding that the offenses did not constitute a single episode of criminal conduct. Waldon again appeals and argues that the trial court abused its discretion in so finding. We disagree and, accordingly, affirm.

## Issue

[3] Waldon raises one issue, which we restate as whether the trial court abused its discretion by finding that the offenses did not constitute a single episode of criminal conduct.

## Facts

[4] In *Waldon v. State*, 829 N.E.2d 168, 172 (Ind. Ct. App. 2005), *trans denied* ("*Waldon I*"), we described the offenses underlying this appeal as follows:

During the summer of 2002, Waldon recruited the assistance of three juveniles: D.A., S.K., and his son, J.W. Waldon, S.K., and occasionally J.W. would break and gain entry into businesses in the Lafayette area by prying around the locks on their doors with a screwdriver. Once inside, they would search for cash but would take other property, such as hair care products, when it was available. While they were inside, D.A., who served as the driver, would act as a lookout and communicate with the others via walkie-talkie. After leaving the businesses, Waldon would divide the proceeds, and D.A. would take him home.

[5] The State charged Waldon with forty counts, including two counts of burglary and two counts of theft related to offenses that occurred on May 13, 2002. The State alleged that, on that night, Waldon burglarized and stole cash from A Total Tan ("Total Tan") and burglarized and stole cash, a laptop, and a projector from Morning Song Wild Bird Food ("Morning Song").

[6] At the jury trial held in October 2003, one of Waldon's accomplices, D.A., testified regarding the Morning Song and Total Tan offenses. On the day of the burglaries, D.A., S.K., and Waldon "drove around looking for businesses to get into[,]" and S.K. and Waldon mentioned Morning Song and Total Tan. Prior Case Tr. Vol. III p. 585. D.A. parked near the businesses while Waldon and S.K. gained entry. The group spent "[l]ess than five minutes" at each business. *Id*. at 590.

[7] The jury found Waldon guilty of several offenses, including the Total Tan and Morning Song offenses.[1] At the first sentencing hearing, held on December 11, 2003, Waldon argued that the offenses constituted a single episode of criminal conduct, and consecutive sentences for those convictions were limited by Indiana Code Section 35-50-1-2. According to Waldon, his total sentence for the two burglaries, if imposed consecutively, could not exceed ten years (based on the ten-year advisory sentence for a Class B felony, one felony level higher than the burglary convictions), and his total sentence for the two thefts, if imposed consecutively, could not exceed four years (based on the four-year advisory sentence for a Class D felony, one felony level higher than the theft convictions).

[8] The trial court found that the Morning Song and Total Tan offenses did not constitute a single episode of criminal conduct[2] and sentenced Waldon to eight years for each burglary and two years for each theft, all consecutive to one another, for a total sentence of twenty years on these offenses.

[9] A lengthy procedural history then unfolded. In Waldon's first appeal, his appellate counsel did not argue that the trial court erred by failing to find that the offenses constituted a single episode of criminal conduct. *See generally*

---

[1] The jury was deadlocked on other charges not relevant to this appeal.

[2] The trial court found that other offenses, not relevant to this appeal, did constitute a single episode of criminal conduct. Those offenses related to Waldon's burglary and theft of neighboring businesses on the same day. This determination was not appealed.

*Waldon I*, 829 N.E.2d 168. Nonetheless, this Court found that the trial court relied on improper aggravators and remanded for resentencing.

[10] On remand, the trial court held a second sentencing hearing and ordered the same sentence; Waldon again appealed.[3] *Waldon v. State*, No. 79A02-0606-CR-458, slip op. at 5 (Ind. Ct. App. Nov. 9, 2006) (mem.), *trans. denied* ("*Waldon II*"). This Court found that the trial court did not abuse its discretion in resentencing Waldon. *Id.* at 9.

[11] On April 28, 2008, Waldon filed a petition for post-conviction relief, which included claims that his trial counsel was ineffective for failing to impeach a co-defendant and that his appellate counsel was ineffective for failing to argue that Waldon's sentence was inappropriate in *Waldon II*. *Waldon v. State*, No. 79A04-0906-CR-304, slip op. at 3 (Ind. Ct. App. Feb. 17, 2010) (mem.), *trans. denied* ("*Waldon III*"). Waldon and the State "reached an agreement whereby the ineffective assistance of trial counsel claim would be dismissed with prejudice, while Waldon's appellate attorney in *Waldon II* would be considered ineffective, and another sentencing hearing would be held." *Id.* at 3-4.

[12] At the third sentencing hearing, the trial court found that the offenses did not constitute a single episode of criminal conduct, and ordered the same sentence as originally imposed. Waldon's counsel did not produce any new evidence

---

[3] It is unclear from the record whether Waldon argued that the offenses constituted a single episode of criminal conduct at the second sentencing hearing, and he does not appear to have raised the argument on appeal in *Waldon II*.

regarding the single episode of criminal conduct argument at this hearing. Waldon appealed and argued that the trial court erred by finding that the offenses did not constitute a single episode of criminal conduct. This Court found that it could not review this argument because the trial transcript "was not made a part of the proceedings below" and was not included in the appellate record. *Id.* at 7.

[13] On July 6, 2020, Waldon filed a second petition for post-conviction relief, which he amended on April 29, 2023. Waldon argued that: (1) his trial counsel was ineffective for failing to present evidence at the third sentencing hearing in support of his single episode of criminal conduct argument; and (2) his appellate counsel was ineffective for failing to include the trial transcript in the appellate record in *Waldon III*.

[14] The post-conviction court found that: (1) trial counsel was ineffective because "additional evidence on [the] Morning Song and Total Tan burglaries may have allowed the trial court to conclude the burglaries were part of a criminal episode";[4] but (2) appellate counsel was not ineffective. Appellant's App. Vol. II p. 58. The post-conviction court ordered that the trial court hold a fourth

---

[4] Although Waldon had not raised the single episode of criminal conduct argument on appeal in *Waldon I* or *Waldon II*, the post-conviction court found that Waldon was not precluded from raising the argument in his post-conviction relief petition because the State agreed to a resentencing hearing following Waldon's first petition for post-conviction relief, and Waldon raised the argument in that sentencing hearing.

sentencing hearing on "the limited issue" of whether the offenses constituted a single episode of criminal conduct. *Id*. at 59.

[15] The trial court held the fourth sentencing hearing on July 1, 2024, where Waldon again argued that the offenses constituted a single episode of criminal conduct. Waldon offered as evidence an affidavit from himself, stating that the offenses occurred "between 10PM and Midnight." Ex. Vol. p. 8. According to Waldon, he first drove to Morning Song and, after completing the burglary and theft there, "immediately" drove to Total Tan, without stopping anywhere in between. *Id*.

[16] Waldon also offered as evidence: (1) an image from Google Maps showing that it would take thirteen to sixteen minutes to drive from Morning Song to Total Tan, which would involve driving 5.2 to 5.8 miles; and (2) an affidavit from a certified legal intern, who stated that it took him thirteen minutes and twenty-five seconds to drive from Morning Song to Total Tan.

[17] The trial court again found that the offenses did not constitute a single episode of criminal conduct and imposed the original consecutive sentences of eight years for each burglary and two years for each theft. The trial court based its ruling on the following facts: (1) the burglaries were conducted over the span of two hours; (2) the "distance and timing between the locations was sufficient to allow Waldon and his companions to re-consider and abandon their criminal conduct"; (3) Waldon presented no evidence regarding the actual route he drove between the two locations; and (4) the offenses occurred in "different

commercial areas" and "included separate businesses, victims, and stolen items." Appellant's App. Vol. II p. 42. The trial court distinguished Waldon's offenses from those in *Gallien v. State*, 19 N.E.3d 303 (Ind. Ct. App. 2014), *trans. denied*, where this Court determined that two burglaries that occurred shortly after one another constituted a single episode of criminal conduct.[5] Waldon now appeals the sentence imposed by the trial court.

## Discussion and Decision

[18] Waldon argues that the trial court erred by finding that the offenses did not constitute a single episode of criminal conduct and that the trial court should have capped the consecutive sentences for those offenses in accordance with Indiana Code Section 35-50-1-2. We review this claim of sentencing error for an abuse of the trial court's discretion. *Yost v. State*, 150 N.E.3d 610, 613-14 (Ind. Ct. App. 2020) (citing *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008)). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. at 14 (citing *Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014), *trans. denied*).

---

[5] We discuss *Gallien* in further detail below.

## I. Single Episode of Criminal Conduct

[19] At the time of Waldon's offenses, Indiana Code Section 35-50-1-2 provided, in relevant part:[6]

> (b) As used in this section, "episode of criminal conduct" means offenses or a connected series of offenses that are closely related in time, place, and circumstance.
>
> (c) Except as provided in subsection (d) or (e)[7], the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. . . . However, except for crimes of violence,[8] the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10, to which the defendant is sentenced for felony convictions **arising out of an episode of criminal conduct** shall not exceed the advisory sentence for a felony which is one (1)

---

[6] The parties agree that this version of the statute governs in this case.

[7] At the time of Waldon's offenses, subsections (d) and (e) provided:

(d) If, after being arrested for one (1) crime, a person commits another crime:

(1) before the date the person is discharged from probation, parole, or a term of imprisonment imposed for the first crime; or

(2) while the person is released:

(A) upon the person's own recognizance; or

(B) on bond;

the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed.

(e) If the factfinder determines under IC 35-50-2-11 that a person used a firearm in the commission of the offense for which the person was convicted, the term of imprisonment for the underlying offense and the additional term of imprisonment imposed under IC 35-50-2-11 must be served consecutively.

[8] Waldon's convictions for burglary, a Class C felony, and theft, a Class D felony, do not constitute crimes of violence under the statute. *See* Ind. Code § 35-50-1-2(a) (enumerating crimes that constitute crimes of violence).

class of felony higher than the most serious of the felonies for which the person has been convicted.

(Emphasis added).

[20] Indiana Code Section 35-50-1-2 does not "prohibit consecutive sentences" for offenses that constitute a single episode of criminal conduct; rather, the statute merely "limit[s] the length of the aggregate term" to the advisory sentence of the next highest felony. *Reed v. State*, 856 N.E.2d 1189, 1199 (Ind. 2006). Thus, if Waldon's offenses constitute a single episode of criminal conduct, the consecutive sentences for burglary, a Class C felony, which total sixteen years, would be limited to a maximum of ten years, the advisory sentence for a Class B felony. Ind. Code § 35-50-2-5(a). Waldon's consecutive sentences for theft, a Class D felony, which total four years, present no issue under the statute because they do not exceed the four-year advisory sentence for a Class C felony. Ind. Code § 35-50-2-6(a).

[21] Our Supreme Court has explained that the determination of whether offenses constitute a single episode of criminal conduct is "'a fact-intensive inquiry.'" *Fix v. State*, 186 N.E.3d 1134, 1144 (Ind. 2022) (quoting *Schlichter v. State*, 779 N.E.2d 1155, 1157 (Ind. 2002)). Indiana Code Section 35-50-1-2(b) directs us to examine whether the offenses "are closely related in time, place, and circumstance." And our Courts have described an "episode" as

> "an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series[,

including] the simultaneous robbery of seven individuals, the killing of several people with successive shots from a gun, [or] the successive burning of three pieces of property . . . ."

*O'Connell v. State*, 742 N.E.2d 943, 950 (Ind. 2001) (brackets in original). (quoting *Tedlock v. State,* 656 N.E.2d 273, 276 (Ind. Ct. App. 1995)). But no bright-line test determines whether multiple offenses constitute a single episode of criminal conduct.

[22] This Court previously determined whether offenses constituted a single episode of criminal conduct by asking whether each offense could be "related without referring to details of" another offense. *Tedlock*, 656 N.E.2d at 276 (citation omitted). In *Tedlock*, the defendant was found guilty of four counts of securities fraud. Although the defendant sold the same type of security to each victim, the offenses occurred over the span of two years, involved different victims, and were perpetrated at either the defendant's office or the victims' homes. The *Tedlock* court concluded that the offenses did not constitute a single episode of criminal conduct because "a complete account of each of [the] four offenses can be related without referring to details of another." *Id*. at 276.

[23] Thereafter, the *Tedlock* test of determining whether a complete account of each offense could be related without reference to one another became a useful test for determining whether multiple offenses constituted a single episode of criminal conduct. *See, e.g.*, *Smith v. State*, 770 N.E.2d 290, 294 (Ind. 2002) (holding that defendant's offenses for depositing six forged checks in his bank account over the course of three hours did not constitute a single episode of

criminal conduct because the Court could "recount each of the forgeries without referring to the other forgeries"); *O'Connell*, 742 N.E.2d at 951 (holding that defendant's separate shootings over the course of two weeks could be "easily alleged without reference to the details of the others").

In *Reed*, 856 N.E.2d at 1200, however, our Supreme Court held that, whether one can "recount each charge without referring to the other **can provide additional guidance** on the question of whether a defendant's conduct constitutes an episode of criminal conduct" but "is not a critical ingredient in resolving the question." *Id*. (emphasis added). The Supreme Court instructed that we instead focus on the "less absolute terms" of whether the offenses constitute "'a connected series of offenses that are closely connected in time, place, and circumstance,'" in accordance with the statute. *Id*. (quoting I.C. § 35-50-1-2(b)). In particular, we emphasize "'the timing of the offenses' and 'the simultaneous and contemporaneous nature of the crimes,' if any." *Fix*, 186 N.E.3d at 1144 (quoting *Reed*, 856 N.E.2d at 1200).

In considering the time and place of the offenses, we are mindful that offenses may still constitute a single episode of criminal conduct even if the offenses: (1) are separated by a short span of time, *Fix*, 186 N.E.3d at 1144 (holding that burglary and robbery of victim during the same night, "'although not precisely simultaneous or contemporaneous,' were sufficiently connected in time" to constitute a single episode of criminal conduct) (quoting *Reed*, 856 N.E.2d at 1201); or (2) occur at separate, although close, locations, *see Henson v. State*, 881 N.E.2d 36, 39 (Ind. Ct. App. 2008) (holding that burglaries of neighboring

garages over the course of the same morning constituted a single episode of criminal conduct), *trans. denied*.

[26] We are also mindful that offenses may constitute a single episode of criminal conduct even if the offenses involve "separate victims and separate acts[.]" *See Harris v. State*, 861 N.E.2d 1182, 1188 (Ind. 2007). But in such cases, we have relied on the presence of a common scheme or purpose to unite the offenses. *See id.* (defendant had sex with two underage girls several minutes apart in exchange for allowing the girls to stay the night); *Reed*, 856 N.E.2d at 1201 (defendant fired at two police officers within minutes of one another while fleeing from law enforcement); *Gallien*, 19 N.E.3d at 310 (defendant timed burglaries of separate businesses such that law enforcement would be investigating the first burglary while the second burglary occurred).

[27] The common scheme or purpose must be more specific than the mere desire to commit multiple crimes. *See Reynolds v. State*, 657 N.E.2d 438, 441 (Ind. Ct. App. 1995) (holding that three burglaries of separate properties over the course of the same day did not constitute a single episode of criminal conduct).[9] And although important, the presence of a common scheme or purpose will not save offenses that are not also closely related in time and place. *See O'Connell*, 742

---

[9] We note that *Reynolds* held that each burglary could be "described without referring to details of the others." 657 N.E.2d 438. As our Supreme Court explained in *Reed*, 856 N.E.2d at 1200, whether one offense can be described without reference to another is not dispositive in determining whether the offenses constitute a single episode of criminal conduct. Nonetheless, our Supreme Court indicated in *Reed* that *Reynolds* remains good law because "the facts of [the] case showed that the timing of the offenses dictated whether the offenses were or were not [a] single episode[] of criminal conduct." *Id.* at 1201.

N.E.2d at 951 (holding that defendant's separate shootings over the course of two weeks, although united by his desire to harm African-Americans, did not constitute a single episode of criminal conduct).

[28] From the foregoing cases, we distill the following test for determining whether offenses constitute a single episode of criminal conduct. We balance the following non-exclusive factors: (1) the time span over which the offenses occurred and the time between the offenses, with extra weight given when the offenses are simultaneous or contemporaneous; (2) whether the offenses occurred at separate locations, and if so, the distance between them; (3) whether the offenses each stand alone, that is to say, can be described without reference to one another; and (4) whether the offenses are united by a common scheme or purpose beyond the mere desire to commit multiple crimes. No one factor is determinative, although the first two are the most important. Ultimately, the time, place, and circumstances must demonstrate that the offenses are but parts of a "larger or more comprehensive series" such that they can be fairly described as a single episode of criminal conduct. *O'Connell*, 742 N.E.2d at 950.[10]

---

[10] Reasonable jurists will inevitably disagree on whether a given set of offenses constitutes a single episode of criminal conduct. And on appellate review, we recognize that the trial court makes the initial determination, which we review only for an abuse of the trial court's discretion. But defendants are not without recourse when a harsh sentence is imposed; even when this Court cannot say that the trial court abused its discretion in declining to find that offenses constitute a single episode of criminal conduct, we may still review whether the sentence is inappropriate based on the nature of the offenses and the character of the offender. *See Lane v. State*, 232 N.E.3d 119, 122 (Ind. 2024) (noting appellate courts' constitutional authority to revise inappropriate sentences pursuant to Appellate Rule 7(B); *S.B. v. State*, 175 N.E.3d 1199 (Ind. Ct. App. 2021)

## II. The trial court did not abuse its discretion by finding that the offenses did not constitute a single episode of criminal conduct.

[29]     We conclude that the trial court did not abuse its discretion by finding that the offenses did not constitute a single episode of criminal conduct here. The offenses occurred over the span of two hours at two separate businesses located approximately five miles apart. Waldon and his accomplices stole unrelated items from each location. And although Waldon appears to have used a screwdriver to pick the locks and gain entry at both locations, nothing unites the offenses beyond Waldon's desire to burglarize multiple businesses over the course of the same night.

[30]     Waldon relies on *Gallien*, 19 N.E.3d 303, as he did before the trial court. In that case, the defendant first burglarized a Goodwill from 4:35 a.m. to 5:14 a.m. The defendant then burglarized Sammy O's, which was located two to three miles away, beginning at 5:28 a.m. The defendant and his cohorts "used a cart stolen in the Goodwill burglary to load a change machine at Sammy O's, and they cut telephone wires at both locations." *Id*. at 309. The defendant's modus operandi was to time the burglaries such that law enforcement would be investigating the first burglary at the time of the second burglary. *Id*.

[31]     The trial court determined that the two burglaries did not constitute a single episode of criminal conduct. The defendant later petitioned for post-conviction

(concluding that offenses did not constitute a single episode of criminal conduct and analyzing whether the sentence was inappropriate under Appellate Rule 7(B)).

relief on the grounds that his appellate counsel was ineffective for failing to argue on direct appeal that the burglaries constituted a single episode of criminal conduct. The defendant's petition was denied, but on appeal, a majority of the panel determined that the defendant's appellate counsel was ineffective.[11]

[32] Here, the two burglaries were farther apart and occurred over a longer period of time than in *Gallien*. Waldon also did not use items stolen in the first burglary to assist him in the second burglary, unlike the defendant's use of the cart in *Gallien*. And most importantly, unlike in *Gallien*, where the two burglaries were part of a single scheme based on distracting and diverting law enforcement, there was no such scheme here. Neither the time, place, nor the circumstances indicate that Waldon's offenses constituted a single episode of criminal conduct. The trial court, thus, did not abuse its discretion by declining to limit Waldon's consecutive sentences pursuant to Indiana Code Section 35-50-1-2. *See Reynolds*, 657 N.E.2d at 441.

## Conclusion

[33] The trial court did not abuse its discretion by finding that the offenses did not constitute a single episode of criminal conduct. Accordingly, we affirm.

---

[11] Judge Bradford dissented, noting that the defendant "committed one robbery, drove to another location over four miles away from the first location, and committed a second robbery," and, thus, was not prejudiced by counsel's failure to raise the argument. *Gallien*, 19 N.E.3d at 313 (Bradford, J., dissenting).

Affirmed.

Altice, C.J., and Brown, J., concur.

ATTORNEY FOR APPELLANT

Timothy P. Broden
Lafayette, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General

Brandon D. Smith
Deputy Attorney General
Indianapolis, Indiana